JACKSON v. BOWLES *et al., Appellants.*

67 609
150 451
80a 121

1. **Pleading**: PRACTICE IN SUPREME COURT. A motion to strike out parts of a pleading should indicate the parts to which objection is made in such a manner that they may be ascertained. If this is not done, the Supreme Court cannot examine the ruling of the trial court upon the motion.

2. **Practice.** After judgment against several defendants it was discovered that one of them was a married woman, and, as to her, the judgment was erroneous. Pending a motion for a new trial, and at the same term at which the judgment was rendered, on plaintiff's motion it was set aside, the suit was dismissed as to the married

woman, and judgment was entered anew upon the verdict against the remaining defendants. *Held*, no error.

3. **Homestead of Heir as Affected by Ancestor's Debt**: SUBSTITUTED NOTE. The ancestor of defendant died indebted on a promissory note and seized of real estate, the title to which passed, by descent, to defendants, who at the time were adults, were heads of families and occupied the land. By arrangement between defendants and the holder of the note, he surrendered it and accepted their note in lieu of it. Judgment having been subsequently obtained against them upon this note, execution was levied upon the land and a sale was made. In ejectment by the purchaser at this sale, *Held*, that, as against him, defendants were not entitled to a homestead in the land. Being adults at the time of their ancestor's death, the property did not descend to them as a homestead, under Sec. 5 of the homestead law, (Wag. Stat., p. 698,) but came subject to the creditor's claim, and this was not extinguished by the substitution of their note for that of their ancestor.

4. **Homestead**: EXECUTION. As against a purchaser of land at execution sale, occupancy at the time of the sale is not alone sufficient to create a homestead in the head of a family. It must have existed at the time the levy was made.

5. **Instructions** which ignore an issue in the case are properly refused.

*Appeal from Cooper Circuit Court.*—HON. G. W. MILLER, Judge.

*John Cosgrove* for appellants, made the following, among other points: At the death of Fanny Bowles the title of the real estate in question vested in appellants by operation of law. (Wag. Stat., p. 529, § 1.) They owed Jackson nothing at that time. More than two months afterwards they gave their note to Jackson and took up her note. Certainly there was no debt owing by them to respondents at the time they became seized of the premises in suit. Their deed, so to speak, is of date at the death of their mother. Hence *Shindler v. Givens*, 63 Mo. 394, and *Lincoln v. Rowe*, 64 Mo. 138, are not applicable to this case, and instruction number 3, given to respondents, should have been refused. The debt upon which the first suit was brought was treated by respondents as the debt of

appellants, and no attempt was made to collect it out of the estate of Fanny Bowles. The court erred in not giving instructions numbers 5 and 7, asked by appellants. This was a proper question for the jury to pass upon under the evidence. The surrender of the note of Fanny Bowles to appellants by Jackson, and the acceptance of their note of date May 9th, 1872, was a payment *prima facie* at least, and the retention of appellants' note and the bringing of suit thereon by Jackson, without offering to return the same, made it a payment of the debt of Fanny Bowles. Edwards on Bills & Notes, (2 Ed.) 546; *Appleton v. Kennon*, 19 Mo. 640; *Lawson v. Gudgel*, 45 Mo. 480.

*Draffen & Williams* for respondents, made the following, among other points: 1. The appellants derived title to the property, by inheritance, from their mother. Their interest was subordinate to that of her creditors, and they could not claim the property against debts which she owed. Not being within the provisions of section 5 of the homestead act, being both of age, they could have no homestead in the lot against creditors of her estate. Their homestead rights could not attach until her debts were paid. The plaintiff, Jackson, had a claim against her estate, and if the substitution of their note for that of their mother be regarded as a payment of her debt, then they did not acquire the homestead until their note was accepted, and under section 7 of the homestead law, as the debt had become theirs and existed at the time of acquiring the homestead, the property was not exempt as against that debt, and the plaintiff's second instruction was rightly given. *Sloan v. Waugh*, 18 Iowa 224. 2. The appellants' first instruction was properly refused. In addition to leaving out of view the provision of section 7, it only required the jury to find that defendants were living upon the property at the time of the sale; not at the time of the levy.

NORTON, J.—This is an action of ejectment to recover

part of lot 5 in the city of Boonville. The answer of de-
fendants admits that they were in possession of the prop-
erty, but denies the right of plaintiffs to recover, and al-
leges that plaintiffs' claim to said property is founded on a
purchase made by them in October, 1874, at a sale made
by the sheriff of Cooper county, under an execution issued
on a judgment against defendants and in favor of plaintiff
Jackson; that at the date of the levy and sale by the
sheriff they were entitled to hold and claim the said prem-
ises as a homestead; that they were housekeepers and
heads of families, and resided, at the date of the levy and
sale, on said premises and were keeping house thereon;
that the premises did not exceed thirty square rods of
ground, nor exceed in value $1,500, and that the city of
Boonville, where the lot was situated, did not contain more
than 40,000 inhabitants; that prior to said sale they caused
the sheriff to be notified of their claim. The plaintiffs,
by replication, put in issue the new matter set up in the
answer and further pleaded that the house and lot in con-
troversy was purchased by one Fanny Bowles, who was
the mother of the defendants and from whom they inher-
ited the property, and that plaintiff, Andrew Jackson,
loaned her a part of the money to pay for the same and
received her note therefor; that she departed this life, and
when he was about to have her estate administered upon
and his demand probated, and said property sold to pay off
said claim, the defendants, for the purpose of inducing and
procuring the plaintiff, Andrew Jackson, to grant an ex-
tension of time for the payment of said note and to pre-
vent the sale of said property, did by themselves and their
attorney represent and state to said plaintiff that they
were the sole heirs to said property, and that if he would
accept and receive their note, and surrender and deliver up
the note of their said mother, for the payment of which
the property in controversy was liable and subject, and not
cause the same to be sold, his debt would still continue to
be equally secure and the property would remain as liable in

their hands for its payment as before; that, being ignorant and unlearned, he was induced by the representations and actions of said defendants and their attorney to take the note of the defendants in exchange for the note of their mother, and that, they afterwards refusing to pay the same, he obtained judgment upon said note and sold said property, and that it would be a fraud upon the plaintiffs to allow the defendants now to set up any such claim; and that by their acts and conduct they were estopped from claiming a homestead in said property; and, further, that said debt under which the property was sold accrued long prior to the time when the defendants acquired said property, and that, as against said debt, the defendants were not entitled to a homestead in said lot, and that there could be no homestead in property owned by tenants in common. On the trial judgment was rendered for plaintiffs, from which the defendants have appealed to this court.

A reversal of the judgment is sought because of the alleged errors of the trial court in overruling defendants' motion to strike out parts of replication; in sustaining the motion of plaintiffs (filed while the motion of defendants for a new trial was pending) asking that the judgment be set aside and the suit dismissed as to Lizzie Myers, and the entry of judgment against defendants in accordance with the verdict, and in giving improper and refusing proper instructions.

1. The motion to strike out parts of replication does not sufficiently designate the parts thereof sought to be stricken out, and for that reason the action of the court in overruling it cannot be considered here. The motion asks that all that portion of the replication setting up new matter and included in brackets be stricken out. No such indications appear in the record before us, and under the authority of *Pearce v. McIntyre,* 29 Mo. 423, we cannot look into it.

*1. PLEADING: practice in Supreme Court.*

2. Nor do we perceive any error in the action of the court in setting aside the judgment and permitting plaint-

2. PRACTICE.    iffs to dismiss the suit as to Lizzie Myers, against whom a default had been taken and judgment rendered, it appearing after the rendition of judgment that she was a married woman. This being done at the same term at which the judgment was rendered was permissible under sections 3 and 6, Wag. Stat., p. 1034. *Thompson v. Mosely,* 29 Mo. 477.

The evidence on the trial tended to prove the respective theories relied upon by parties in the answer and replication, and, no point having been made on its admissibility, the only remaining question for disposition arises out of the action of the court in giving and refusing instructions. The following instructions were given for plaintiff, to which defendants excepted: 1. The first is substantially as follows: that the sheriff's deed passed the title to the lot to the plaintiff, unless the defendants were entitled to a homestead therein. 3. The jury are instructed that, if they shall find from the evidence that Fanny Bowles, prior to her death, was indebted to the plaintiff, Andrew Jackson, for money borrowed to pay off an incumbrance on said property, and that she was then the owner of said property sued for, and that these defendants acquired title to said property by inheritance from said Fanny Bowles, and that the debt upon which the judgment and sheriff's deed read in evidence was based was merely a continuation of the former debt, and a mere substitution of the note of the defendants for the note of said Fanny Bowles, the debt being the same, then said debt existed prior to the acquiring of the property sued for by defendants, and they are not entitled to a homestead therein as against said debt, and the verdict of the jury must be for plaintiffs. 4. The jury are further instructed that, before the defendants can be entitled to the property sued for on the ground that it is a homestead, they must satisfy the jury by evidence that each of them was at the date of the levy and sale of said property a housekeeper or head of a family, and that at said date the said prop-

erty was used by each of them as a homestead, in good faith as such; and if either one of said defendants has failed to make said proof, then the jury, as to the interest of such defendant in said property, must find for the plaintiffs. It is claimed that the first instruction is wrong in referring to the jury a question of law as to a homestead. If this instruction stood alone, the objection would be well taken, but when considered in connection with the one numbered four, *supra*, and one numbered six, given for defendants, in which the jury are told what is necessary to constitute a homestead, it is entirely removed.

Nor can we see any error in the third instruction. The defendants were adult heirs of Fanny Bowles, deceased, 3. HOMESTEAD OF HEIR AS AFFECTED BY ANCESTOR'S DEBT: substituted note. who owned the lot in dispute at the time of her death, and for the reason that they were adults it did not descend to them as a homestead under section 5 of the homestead law. While at her death the land descended to them, and the title thereto was cast upon them by descent, they took it subject to be charged with the payment of the debts of their ancestor. The debt due to Jackson from Fanny Bowles was contracted for money used by her in paying off an incumbrance on the property, and there can be no doubt about the right of Jackson, after her death, to have proceeded under the administration laws, and have subjected it to sale for the payment of his debt, and the mere acceptance of the note of the defendants by plaintiffs, after her death, was neither an extinguishment nor payment of the original debt. Promissory notes, either of a maker himself or of a third person, are often received by the holder or the creditor in payment of the original note or debt due by the maker, and the question often arises when and under what circumstances the receipt of the substituted note will be deemed a due and absolute extinguishment or satisfaction of the original debt or note, or not. In general, by our law, the receipt of a promissory note of the maker, or of a third person, will be deemed conditional satisfaction only of the orig-

inal debt or note of the makers, (that is, if the substituted note so received is regularly paid.) Unless otherwise agreed upon by the parties, it is at most, therefore, only *prima facie* evidence of satisfaction, rendering it necessary that the party receiving the substituted note should account for it before he will be entitled to recover upon the original debt or note. But if it is agreed between the parties that the substituted note shall be an absolute payment of the original debt or note, then it will operate as an absolute satisfaction or extinguishment thereof. Story on Prom. Notes, § 404; *Appleton v. Kennon*, 19 Mo. 637; *Leabo v. Goode*, ante p. 126; *Strachn v. Foss*, 42 N. H. 43; *Heard v. Evans*, 1 Freem. Ch. (Eng.) 79; 2 Wash. on Real Prop. 173. If it was the understanding and agreement that the note of defendants was given and accepted, not in payment, but as a mere substitution or continuation of the original debt of Fanny Bowles, (which question was properly referred to the jury by the instruction,) we are at a loss to perceive on what principle the defendants could be allowed to assert a homestead right in the property chargeable with the payment of such debt, which was contracted long anterior to the acquisition of any title therein by defendants, and which descended to them saddled with this charge

It is also insisted that the court committed error in refusing the first, second, fifth and seventh instructions asked by defendants. They are as follows: 1. Although the jury may find from the evidence in this case that Andrew Jackson, one of the plaintiffs, loaned the sum of $200 to Fanny Bowles during her life-time, and that said Fanny executed her note therefor to the said Jackson, and that the said money so borrowed was used in paying for the premises in the petition described; and if they further find, after the death of the said Fanny, the defendants, Charles Bowles and Louisa Coffer, executed their note to the said Jackson and took up the note of Fanny Bowles; and if they further find that Andrew Jackson brought suit on the note given by Charles Bowles and Louisa Coffer and re-

covered judgment thereon, and that Jackson caused execution to issue on said judgment, and that the sheriff of Cooper county levied on the land described in the petition and sold the same to the plaintiffs; and if they further. find that the defendants are the only children and heirs at law of Fanny Bowles, deceased, and that each of the defendants have families and occupy the premises jointly or severally as a homestead, and did so occupy it at the time of the sale by the sheriff to plaintiffs, claiming the same as a homestead, then the plaintiffs cannot recover unless the jury further find that the premises described in the petition included more than thirty square rods of ground and exceeded in value $1,500, and they must find their verdict for the defendants. 2. The jury are instructed that if they find from the evidence that Fanny Bowles died seized of the real estate and premises described in the petition, and that these defendants are her children and only heirs at law, then, as a matter of law, the title to said premises at the death of said Fanny passed to and vested in these defendants, and if they further find that these defendants had and still have families, and that they have possession of said premises, and had at the time of the sale by the sheriff to plaintiff, then the jury must find for defendants, unless the premises exceed in quantity thirty square rods of ground and $1,500 in value. 5. If the jury believe from the evidence that the note given by defendants to plaintiff, Andrew Jackson, was by him accepted in payment of the note given to said Andrew Jackson by the said Fanny Bowles, then the court instructs the jury that the property in controversy is not subject to execution and sale under the judgment obtained on said note, unless they further find that the property included more than thirty square rods of ground or exceeds in value the sum of $1,500. 7. If the jury believe from the evidence that the note signed by Charles Bowles and Louisa Coffer was given by them, and accepted by Jackson, in payment of the note held by

him against Fanny Bowles, then the plaintiffs acquired no title at the sheriff's sale, and cannot recover in this suit.

The first and second instructions were properly refused, because the jury were told by them that an occupancy **4. HOMESTEAD: execution.** of the premises at the time of the sale alone was sufficient to create a homestead.

The fifth and seventh were also properly refused, because they ignored the question of occupancy entirely, and **5. INSTRUCTIONS.** would have authorized the jury to have found a verdict for the defendants, although they might have believed that defendants had never occupied the premises as a homestead.

The cause was given to the jury in the most favorable light to defendants, when the court, at their instance, gave the following instruction: "That a homestead may be acquired and claimed by a tenant in common; and the court further instructs the jury that if they believe from the evidence that, at the time of the sale of the property in controversy by the sheriff, the entire property did not include more than thirty square rods of ground, nor exceed the total value of $1,500, then the property was exempt from levy and execution as a homestead, and the jury will find for the defendants." When this instruction is considered it would seem that defendants have no right to complain, for in view of the evidence disclosed by the record it is almost equivalent to directing the jury to find for the defendants. It is not at all necessary to a proper disposition by us of the cause to determine the question whether a tenant in common can avail himself of the homestead act, and, if so, under what circumstances the claim can be asserted. It appears that the damages claimed in the petition was $100; the verdict and judgment was for $126. For the excess of $26 plaintiffs have entered a *remittitur* in this court. Judgment affirmed, in which the other judges concur.

AFFIRMED.