S. A. DRAKE, Admr., etc., v. CHRISTOPHER C. CRITZ, Respondent.

St. Louis Court of Appeals, March 27, 1900.

1. **Promissory Note: PAYMENT: EVIDENCE: ESTATES OF DE-CEASED PERSONS.** In the case at bar the evidence is examined and held to be wholly insufficient to establish payment.

2. ———: ———: ———. Estates of deceased persons should not be given away by juries upon such unsatisfactory and insufficient evidence.

Appeal from the Scotland Circuit Court.—*Hon. Edwin R. McKee*, Judge.

REVERSED AND REMANDED.

No brief for appellant furnished reporter.

*N. M. Pettingill* for respondent.

(1) Declarations of deceased persons against interest are admitted as direct evidence of the facts declared. They find their guaranty of reliability in the circumstances that they are against the interest of the person who made them and presumably would not have been made had they been

false. McKelvey on Evidence, sec. 178, p. 254. These declarations more properly belong under the class of admissions. McKelvey on Evidence, sec. 64, p. 97. Their effect is that of a waiver of proof of the facts to which they relate. McKelvey on Evidence, sec. 74, p. 110. The evidence need not be direct, as payment may always be proved by inferential evidence. Ashbrook v. Letcher, 41 Mo. App. 372. (2) Not only the credibility, but the weight, of the admissions is a question for the jury. Underhill on Evidence, sec. 80, p. 114. Payment is simply the doing of what a man has agreed to do. It is therefore a pure question of fact. * * * In every such case the ultimate point of inquiry does not touch a rule of law but stops at the conclusion of fact. 1 Thompson on Trials, sec. 1253, p. 957. Where the facts offered in evidence by a party to the suit, if true, make out a *prima facie* case, the jury and not the judge, ought to pass upon them, however meager or improbable the evidence may be. 2 Thompson on Trials, sec. 2246, p. 1599; Woods v. Atlantic Mutual Ins. Co., 50 Mo. 112. (3) The appellant, in contending that one of the instructions given, was improper, invokes an ancient rule of common law that the payment of a less sum at the time and place where a greater and undisputed sum is due is no satisfaction of the greater sum even though accepted as such, because there was no consideration for the giving up of the rest. (4) The courts regard the rule preventing a creditor from making a valid contract to take a less sum of his debtor in discharge of a greater as technical and unreasonable. Hooker v. Ins. Co., 69 Mo. App. 136; Jeffrey v. Davis, 124 N. Y. 164; Brooks v. White, 37 Am. Dec. 97. And the rule should be repudiated altogether. Weymouth v. Babcock, 42 Maine, 42. The instructions taken as a whole fairly presented the law and that is sufficient. Yocum v. Trenton, 20 Mo. App. 489.

BLAND, P. J.—The suit is on the following written instrument:

"$1,000.00.                           June 27, 1890.

"Four years after date I promise to pay to the order of John Jordan, One Thousand Dollars, at Hannibal, Mo. Value received with interest at 4 per cent per annum.

"If this note is not paid at maturity, the undersigned agree to pay reasonable expenses of collection, including attorney's fees No......

"Due............                       C. C. Critz."

The petition alleged that all interest on the instrument to June 27, 1898, had been paid by the defendant. The answer admitted the execution of the instrument and the legal capacity of plaintiff to sue, but alleged that on the ...... day of May, 1898, the defendant paid the entire amount of the obligation to John Jordan, the payee. There was a trial by jury and verdict and judgment for defendant, from which plaintiff after an unsuccessful motion for new trial appealed to this court.

The evidence is, that John Jordan had for many years resided with the family of one Smiley in Hannibal, Mo.; that he was a bachelor and had been possessed of a large estate, which, with the exception of about $10,000, he had distributed among his nephews and nieces prior to his death. The plaintiff was the depositary of Jordan's valuable papers and had had the instrument sued on in his possession from the date of its execution, and entered or caused to be entered the credits of interest thereon. Jordan also made deposits of money in bank, through the plaintiff. Miss Fannie Smiley was a niece of Jordan and a member of the family with which he resided. For ten or eleven years prior to Jordan's death she looked after him generally, and did his writing for him. The wife of defendant was a niece of Jordan and to her he gave one-half of the interest on the obligation,

Drake v. Critz.

whenever it was paid. At the request of Jordan, Fannie Smiley wrote to Peter Briggs to see defendant and to tell him the interest was due and to pay one-half of it, $20, to Hattie (defendant's wife) and to send $20 to Jordan. Early in June defendant called at Smiley's and paid Jordan some money. The claim of respondent is that at this time the whole debt was paid. Miss Smiley, the only witness who testified about this payment, on her direct examination testified in reference thereto, as follows:

"Q. Did he pay him some money then? A. Yes, sir.

"Q. What did Mr. Jordan say, if anything, when the money was paid? A. Well, I don't know that I could use his exact words; he said the debt was cancelled; those are his words; it was cancelled.

"Q. The debt was cancelled? A. Yes, sir.

"Q. Did he use this term for settled; was that his favorite term? A. Yes, sir.

"Q. When anything was paid to call it cancelled? A. Yes, sir.

"Q. He said that the debt was cancelled? A. Yes, sir."

On her cross-examination the following appears:

"Q. As a matter of fact, you know he did not pay John Jordan the face of this note, $1,000? A. Well, I rather think not.

"Q. You know it, don't you, as a matter of fact?"
Objected to.

By the court: The objection sustained.

"Q. You know what he did pay, do you not? A. I can't say about that.

"Q. You know in the neighborhood of what he paid? It was the interest alone that was settled? A. He kept his interest paid on the note.

"Q. You wrote a letter to W. P. Briggs to look after the interest? A. Yes, sir. (Apparently dated in 1893.)

"Q. In response to that he come down? A. He come down. Come down to attend the democratic convention, and he also combined business with pleasure, he said * * *

"Q. Now then, you say at the time he was there you simply heard the expression, ' It was cancelled;' did he say whether it was the debt or the interest? A. No, sir.

"Q. Do you know as a matter of fact, that the interest was all that was settled there, wasn't it, Miss Smiley? A. I never heard anything to that effect.

"Q. Don't you know from Mr. John Jordan, that the interest was all that was settled—"

Objected to.

By the court: The objection sustained.

"Q. You didn't understand from that expression, did you, that the debt had been settled."

Objected to.

By the court: The objection sustained.

To the said action of the court in sustaining said objection plaintiff's counsel did then and there at the time except.

"Q. You simply gave the words that he said, that it was settled? A. Yes, sir.

"Q. It is cancelled? A. It is cancelled.

"Q. Didn't say whether it was the interest or principal? A. No, sir.

"Q. Where were you at when you heard that? A. I was in the front room of the house and they were on the porch.

"Q. This note was not delivered to him? A. No, sir. * * *

"Q. I will get you again to tell me what part of the room you were in? A. In the front part of the room at the front window.

"Q. You simply heard the expression, 'It is cancelled?' A. Yes, sir.

"Q. You now say you do not know whether that meant the debt or just the interest? A. No, sir; I don't, because he did not say so.

"Q. He wasn't trying to collect the debt, Mr. Jordan wasn't? A. No, sir.

"Q. Simply trying to collect the interest? A. Yes, sir, he did collect it.

"Q. At that time? A. Yes, sir.

"Q. That is all he claimed? A. So far as I know."

A few days after this conversation Jordan went to Monroe county to visit his brother, where on July 12, 1898, he died. The evidence is that he did not keep large sums of money about the house, but kept a deposit account in bank; that the balance to his credit on his bank account when he died was about $160; that it was not known that he had any considerable money about his person after defendant made the payment in June. At the close of all the evidence the plaintiff moved the court to instruct the jury to find the issues for him. The refusal of the court to so instruct is assigned as error.

If the record contains any substantial evidence of payment, it was proper to submit that issue to the jury. Proof of payment, like any other issuable fact, may be established by facts and circumstances from which the inference of payment may be logically and reasonably inferred. Ashbrook v. Letcher, 41 Mo. App. loc. cit. 372. The facts and circumstances to authorize an inference of payment must all point one way (to payment), and be inconsistent with any other reasonable hypothesis than that the payment was made. The facts and circumstances detailed by Miss Smiley, from which the jury were authorized by the instructions of the court to make the inference of payment, do not all point to the pay-

Drake v. Critz.

ment of the principal obligation. On the contrary, the evidence as a whole indicates that the interest only was demanded and paid, and that the interest—not the principal—was the subject-matter of conversation between Jordan and defendant. Nor does Miss Smiley's evidence for the same reason show that Jordan made any admission of the payment of the principal debt. The jury were sent to their room to guess whether Jordan when he made the remark, "It is cancelled, or that cancels it, had reference to the principal or the interest due on the obligation, or to some other wholly independent debt. If the payment was made it is unaccountable that Miss Smiley was not called on to write a receipt against the note, or to write an order on Drake to surrender it to defendant, or at the least, to witness the fact that payment was made. The conduct of the parties is inconsistent with the theory of payment; the evidence is wholly insufficient to establish payment. Estates of deceased persons should not be given away by juries upon such unsatisfactory and insufficient evidence. The court erred in excluding testimony offered by appellant. Miss Smiley, while fair and truthful, was evidently favorable to the defendant, and the fullest latitude should have been afforded appellant in her cross-examination.

Judgment reversed and cause remanded. All concur.