## J. W. KEYSER, Respondent, v. JOHN HINKLE and WILLIAM ADAIR, Appellants.

**Kansas City Court of Appeals, December 2, 1907.**

1. **PRINCIPAL AND AGENT: Agent's Knowledge: Adversary Position: Notes: Representation.** The principal as a rule is charged with the knowledge of his agent; but this doctrine has no application where the agent acts for himself so as to assume a position adverse to that of his principal, since his act in such case is his own and not his principal's and he will not communicate his action to his principal. So where an agent to loan money signs a note to a blank payee and secures a surety's signature on the representation that the loan is for the benefit of another person than the principal, the principal cannot be bound, since his signature to the note as principal maker destroys his agency and the surety must take notice thereof.

2. **BILLS AND NOTES: Payment: Renewal: Surrender.** When a renewal note is accepted by the payee and the old note surrendered, the payment is conditional unless there is an expressed understanding to the contrary; and upon the failure to pay the renewal note the payee may maintain an action on the original note, provided that he account for the renewal note at the trial.

3. ———: **Verified Answer: Non Est Factum.** A verified answer is examined and construed not to amount to a non est factum since it admits the execution of the note in suit.

Appeal from Vernon Circuit Court.—*Hon. J. B. Johnson,* Judge.

AFFIRMED.

*A. B. Lovan* for appellant.

(1) Mr. Adair signed the note as a surety only. As such surety he is only bound technically and has a right to rely upon being technically released. Higgins v. Harvester Co., 181 Mo. 311. (2) It is a general rule that a surety has a right to choose the terms upon which he will become liable, and to stand strictly upon those terms, so that any failure to comply with the conditions upon which he signs, discharges him. 1 Enc. of Law (2 Ed.), 379, 380, 383; 27 Enc. of Law (2 Ed.), 441, 443, 444, 533; 1 Brandt on Suretyship and Guaranty (2 Ed.), sec. 114. (3) Mr. Adair did choose the terms upon which he signed the note, viz: that said note was to be used as security in obtaining money and that the money obtained would be used for the benefit of the bank of Salmon & Salmon in its banking business and for no other purpose. The money was not used for such purpose but was fraudulently diverted to the use of G. M. Casey. This diversion was without the knowledge or consent of Mr. Adair. 1 Clark & Skyles on Law of Agency, sec. 507; Mundorff v. Wickersham, 63 Penn. St. 89; Alton & Co. v. Olson, 34 Minn. 452; Union Trust Co. v. Phillips, 7 S. D. 225; Haskit v. Elliott, 58 Ind. 493. (4) It therefore was material to establish the fact that Thomas M. Casey was acting as the agent of respondent when he procured the note sued on. The contention of appellant is that it was the duty of the court to submit the question of agency to the jury. 1 Clark & Skyles on Agency, 164; Mosby v. Commission Co., 91 Mo. App. 504; 1 Am. and Eng. Ency. Law (2 Ed.), 962; Mosby v. Commission Co., 91 Mo. App. 506; Barrett v. Railroad, 9 Mo. App. 226; Mechem

on Agency, sec. 106. (5) It seemed to be the opinion of the trial court that because Thos. M. Casey was the agent and manager of the bank of Salmon & Salmon he could not be the agent of respondent. The remarks of the court indicate that it was for this reason that the peremptory instruction was given. The appellant pleads in his answer that Casey was the manager of the bank of Salmon & Salmon. That fact does not prevent him at the same time acting as the agent of respondent in loaning respondent's money and procuring a note for such loan. 1 Clark & Skyles on Agency, page 931, note. (6) It was the province of the jury to say whether, under all the facts and circumstances in evidence, the respondent accepted the four thousand dollar note in satisfaction of the three thousand dollar and one thousand dollar notes. If he did so accept it, then he cannot recover on the three thousand dollar note. 2 Daniel on Negotiable Instruments (4 Ed.), pages 294, 298; Bank v. Bornman (Ill.), 16 N. E. 210; Kendall v. Insurance Society, 51 N. W. 464; Neff v. Clute, 12 Barbour (N. Y.), 470; Stanley v. McElrath, 10 L. R. A. 548; Jackson v. Bowles, 67 Mo. 615; Siemans & Halske Electric Co. v. Ten Broek, 97 Mo. App. 175; Appleton v. Kennon, 19 Mo. 637; Ashbrook v. Letcher, 41 Mo. App. 372; Drake v. Critz, 83 Mo. App. 650. (7) If the name of John Hinkle was forged to the note sued on, then the appellant, William Adair is released from any liability. Bank of Maitland v. Myers, 50 Mo. App. 160; Bank v. Nickell, 34 Mo. App. 298; R. S. 1899, sec. 4679.

W. E. Owens, with R. T. Railey, for respondent.

(1) Where the evidence is of that character that the trial judge would have a plain duty to perform in setting aside the verdict as unsupported by the evidence, it is his duty and his prerogative to interfere before submission to the jury and direct a verdict for the defendant. Jackson v. Hardin, 83 Mo. 186; Powell v. Railroad,

76 Mo. 80; Reichenbach v. Ellerbe, 115 Mo. 588; Hite v. Railroad, 130 Mo. 141; State v. O'Neill, 151 Mo. 89, 90. (2) The note sued on, was in possession of plaintiff; was payable to him; was drawn in the ordinary form of negotiable instruments, without any erasures or irregularities appearing therein; was signed by all the parties who were to sign it, to-wit: G. M. Casey, Thos. M. Casey, William Adair, J. R. Barker and John Hinkle. The amended answer of Adair admits that respondent loaned the three thousand dollars and took the note sued on as evidence of said indebtedness, but claims that the money was diverted from the bank to G. M. Casey. Upon elementary principle, as well as under the authorities hereafter cited, the court upon. foregoing facts, felt compelled to direct a verdict for respondent, as against Adair. Hamilton v. Marks, 63 Mo. 175; Borgess Inv. Co. v. Vette, 142 Mo. 560; Bank v. Salmon, 117 Mo. App. 510. (3) On this state of facts, appellant made Thomas Casey his agent in filling out and delivering the note. He was conclusively bound by what Casey did, and the court, by reason thereof, properly directed a verdict in favor of respondent and against Adair. L. & T. Co. v. Brown, 59 Mo. App. 469; Bank v. Bosserman, 52 Mo. App. 273; Schooler v. Tilden, 71 Mo. 580; 2 Daniel, Neg. Inst. (1 Ed.), sec. 1469; 1 Dan. Neg. Ins. (5 Ed.), sec. 142, L. 164, 5; 2 Brandt, Guar. and Sur., sec. 410; Gibbs v. Johnson, 63 Mich. 671; Brown v. Prob. Judge, 42 Mich. 504; McCormick v. Bay City, 23 Mich. 457; 7 Am. Dig. (Cent. Ed.), sec. 86, p. 134, and numerous cases cited; Angle v. Insurance Co., 92 U. S. 330; Nash v. Fugate (W. Va.), 32 Gratt. 595, 34 Am. Rep. 780; Harvester Co. v. McLean, 57 Wis. 258; Davis v. Lee, 26 Miss. 505, 59 Am. Dec. 267. (3) It is one of the maxims of the law, that, as between two innocent persons, he who is mostly at fault and brought about the conditions complained of, should bear the loss. Marks

127 App—5

v. Hamilton, 63 Mo. 167; Henderson v. Bondurant, 39 Mo. 372; Bank v. Garten, 34 Mo. 119; Tumilty v. Bank, 13 Mo. 276; Curry v. Bank, 100 Mo. App. 538; Pitman v. Mining Co., 78 Mo. App. 441; Bank v. Wade, 73 Mo. App. 561; Walters v. Tielkemeyer, 72 Mo. App. 376; Bank v. O'Connel, 23 Mo. App. 166; McNeil v. Bank, 46 N. Y. 325; Seibel v. Bank, 55 N. Y. 288; Moore v. Bank, 55 N. Y. 49; Weyh v. Boylan, 85 N. Y. 400; Fairbanks v. Sargent, 104 N. Y. 117; Dair v. U. S., 16 Wall. 1; Angle v. Insurance Co., 92 U. S. 330, 23 L. Ed. 556; 2 Daniel, Neg. Inst. (1 Ed.), secs. 776, 1469; 2 Beach, Mod. Eq. Jur., sec. 1103, and cases; 2 Brandt Guar. and Sur., sec. 410; Gibbs v. Johnson, 63 Mich. 671; Brown v. Prob. Judge, 42 Mich. 504; McCormick v. Bay City, 23 Mich. 457; Chicago v. Gage, 95 Ill. 593; Comstock v. Gage, 91 Ill. 328; Smith v. Peoria County, 59 Ill. 112; Nash v. Fugate (W. Va.), 32 Gratt, 595, 34 Am. Rep. 780; Cutler v. Roberts, 7 Neb. 4, 29 Am. Rep. 371, and note, 377; 7 Am. Dig. (Cent. Ed.), sec. 86, p. 134, and numerous cases cited; Johnson v. Weed & G. Mfg. Co. (Wis.), 79 N. W. 237; 103 Wis. 291, 295; Harvester Co. v. McLean, 57 Wis. 258, 15 N. W. 177, 1 N. W. 285; Armstrong v. Scott, 36 Fed. 63; Bank v. Neal, 63 U. S. (How.) 96; Gillaspie v. Kelly, 41 Ind. 158, 13 Am. 318; Iowa College Trustees, 12 Iowa 462; Lowden v. Bank, 38 Kan. 533, 16 Pac. 748; Battalora v. Erath, 25 La. Ann. 318; Ives v. Bank, 84 Mass. (2 Allen) 236; Davis v. Lee, 26 Miss. 505, 59 Am. Dec. 267; Weyerhauser v. Dun, 100 N. Y. 150; McArthur v. McLeod, 51 N. C. (6 Jones) 475; Bank v. Smith, 5 Ohio (5 Ham) 222; Jones v. Prumm, 6 Tex. 170; Geddes v. Blackmore, 132 Ind. 551, 32 N. E. 567; Spitler v. James, 32 Ind. 202, 2 Am. 334; Coburn v. Webb, 56 Ind. 96, 26 Am. Rep. 15; Jones v. Insurance Co., 58 Ky. (1 Metc.) 58; Frank v. Lillienfeld (W. Va.), 33 Gratt. 377. (4) Where a note has been given to take up a former account, or where a note has been given in lieu of a former note and the parties

interested, with knowledge of all the facts, in good faith, for a valuable consideration, agree that the new note, which is duly signed by the maker, may be taken with the understanding that the original account or the original note shall be cancelled, then there is a novation of the contract.  Otherwise the new note, when taken, if delivered and cancelled at the trial, leaves the original note or account in full force and effect, and the owner of same may sue thereon as though no new note had been taken.  Appleton v. Kennon, 19 Mo. 637; McMurray v. Taylor, 30 Mo. 266; Howard v. Jones, 33 Mo. 583; Doebling v. Loos, 45 Mo. 151; Block Admr. v. Dorman, 51 Mo. 32; Leabo v. Goode, 67 Mo. 126; Brooks v. Mastin, 69 Mo. 63; Biggs v. Goodrich, 74 Mo. 112; Holland v. Rongey, 168 Mo. 19; State ex rel. Crider v. Wagers, 47 Mo. App. 438; Berkshire v. Hoover, 92 Mo. App. 352.

JOHNSON, J.—This action, begun in Henry county and taken by change of venue first to Cass and then to Vernon county, is on a promissory note of which the following is a copy:

"Clinton, Missouri, Dec. 14, 1901.

"One year after date we promise to pay to the order of J. W. Keyser three thousand dollars, for value received, payable at the banking house of Salmon & Salmon, Clinton, Missouri, with interest from date at the rate of eight per cent per annum; and if interest be not paid annually to become as principal and bear the same rate of interest.

G. M. CASEY,
THOS. M. CASEY,
WILLIAM ADAIR,
JOHN HINKLE,
J. R. BARKER."

The verified answer of William Adair begins with a general denial and then tenders special defenses, the nature of which appears in the following statement of

its contents: "Defendant, further answering, denies that he executed or delivered the note sued on as described in plaintiff's petition and alleges that he signed the note when there was no payee's name written in it; that he did not authorize the writing in the note of the name of the payee except on certain conditions as herein set forth; that he so signed said note upon certain conditions and limitations and under the following circumstances, viz:" He then states that Thos. M. Casey, one of the signers of the note, at the time of its execution, was the manager of the private bank of Salmon & Salmon, conducted in the city of Clinton; that defendant had kept a large account in said bank for a number of years and was interested in its welfare; that plaintiff had employed Thos. M. Casey as his agent to procure a borrower for the sum represented by the note, that Casey induced the defendant to sign the note as surety by means of the false and fraudulent representation that the money was being borrowed for the benefit of the bank and that the bank would repay it when due; that, in fact, the money was not borrowed for said bank nor used for its benefit, but was diverted by said Casey to the use of his father; that this diversion was with the knowledge and consent of plaintiff and was fraudulently concealed from defendant who would not have signed said note for any other purpose than that of benefiting the bank. The answer concludes with the allegation "that the note sued on has been paid." Defendant Hinkle answered with a plea of *non est factum* and the further defense that the note "was paid by the acceptance on the part of plaintiff of a new note of four thousand dollars, hereinafter described." The replies were general denials. At the conclusion of the evidence, the court peremptorily instructed the jury to find for plaintiff against defendant Adair and further instructed them to return a verdict against defendant Hinkle on the finding that he signed the note.

Thus instructed, the jury found against both defendants but Adair alone appealed from the judgment entered on the verdict.

Facts appearing from the evidence introduced by defendants which are most favorable to the defenses interposed by the appealing defendant are as follows: The banking firm of Salmon & Salmon had been engaged in business at Clinton for many years and, until its failure in 1905, had enjoyed the fullest confidence of the public. The members of the firm were old men who, for some time, had entrusted the management of the business to Thomas M. Casey. Mr. Adair, to whom we shall hereafter refer as the defendant, was a farmer and stockman, who lived near Clinton. He had been on terms of close friendship with Messrs. Salmon & Salmon for a long time, had always carried a large account in the bank, was interested in its welfare and, on many occasions, had become surety on notes and other obligations for its benefit. He always had followed the rule—well known to Mr. Casey—of refusing to become surety for any other persons than Messrs. Salmon & Salmon. Plaintiff also was a farmer and stockman living in that county and was a customer of the bank. A few days before the note in controversy was executed, he told Mr. Casey that he had four thousand dollars he wished to lend and asked Mr. Casey to attend to lending it for him. He deposited three thousand dollars in the bank on this occasion with the assurance that the remaining one thousand dollars would be furnished when needed. The facts we are stating relative to what transpired between plaintiff and Casey are taken from the testimony of defendant's son, who claims to have obtained them from a conversation he had with plaintiff a short time before the trial. The witness was asked: "Q. What was said by Mr. Keyser about who borrowed this money? A. Why he said at the time Mr. Casey told him that all of these parties wanted to borrow the money. Q.

All of what parties? A. That is all that signed the note; that John Barker, William Adair, John Hinkle and G. M. Casey, and when he tried to collect the note later on, before the bank failed, Tom Casey told him that the money was for his father, George M. Casey."

It appears from this and from other statements we do not deem it necessary to quote that shortly after plaintiff enlisted the services of Casey, the latter presented him with the note in suit and told him that all of the persons including himself whose names were signed to the note were joint makers and were borrowing the money for their own use. With this understanding, plaintiff accepted the note and gave a check for the proceeds. He did not know the money had been borrowed for the use of Mr. Casey's father, nor did he know what representations had been made to those whose names appeared as comakers. Defendant, in his testimony, admitted he signed the note and declared that he signed it at the request of Mr. Casey who assured him at the time that it was for the accommodation of Messrs. Salmon & Salmon and for use in their banking business, and that without such assurance, Mr. Casey well knew he would not have signed it. A few days after the note was delivered to plaintiff, Mr. Casey delivered to him another note for one thousand dollars to complete the transaction. After the maturity of the notes, Casey procured an extension of time by delivering to plaintiff a note for four thousand dollars which bore the signatures of the persons who had signed the note in suit. It is conceded that the signature of Mr. Hinkle to this renewal note was forged by Casey. Plaintiff, ignorant of this fact as well as of the fact that the signature of defendant to the first note had been fraudulently procured, surrendered the two old notes to Casey, who took them to the bank and left them there. Shortly after the bank failed plaintiff learned, for the first time, of

the forgery. He went to the bank, found and obtained possession of the two old notes (they had not been cancelled) and brought the present action on the three thousand dollar note and another suit on the one thousand dollar note. Some of the facts we have stated are controverted by plaintiff, but in the present posture of the case, we must treat them as proved. Defendant Hinkle testified in his own behalf that he did not sign either the note in suit or the renewal note. All of the evidence supports his statement as to the renewal note, but we think the great weight of the evidence establishes the fact that he did sign the first note.

Counsel for defendant, in their brief, advance three propositions in support of their insistence that the learned trial judge erred in peremptorily directing a verdict against him.

(1) "He (Adair) signed the note as a surety on certain conditions, to-wit, that it was an accommodation note and that the proceeds were to be used only for the benefit of the Salmon & Salmon bank. The proceeds were not used for the benefit of said bank but were fraudulently diverted to the use of George M. Casey. The respondent is bound by the false representations of Thos. M. Casey because Casey was acting as the agent of respondent in procuring the loan represented by the note sued on. (2) "The note sued on was paid by the acceptance, on the part of respondent, of the four thousand dollar note, in settlement of the three thousand dollar and the one thousand dollar notes. (3) "The name of John Hinkle was forged to the note sued on, after it had been signed by William Adair."

We will deal with the questions of law arising under these different heads in the order of their presentation.

## I.

To escape liability on the first ground, the burden was on defendant to establish by proof the facts that he

signed the note in suit as surety, that he was induced to sign it by the false representation fraudulently made by Casey that the note was for the accommodation of Salmon & Salmon; that in fact it was the intention, afterwards consummated, to procure the loan for another purpose and that plaintiff when he accepted the note either had actual knowledge of the fraud practiced by Casey or by making the latter his agent in the transaction had placed himself in a position where the fraud of his agent should be imputed to him. The evidence he introduced supports and indeed leaves no room to doubt the facts that his relation to the transaction was that of surety, that he was the victim of Casey's fraud and that the proceeds of the note were diverted to another use than that represented. But it is not even suggested in the evidence nor in argument that plaintiff had actual knowledge of the fraud perpetrated, and we think the facts adduced negative the conclusion that the wrongful act was committed by Casey as the agent of plaintiff. We recognize the soundness of many of the principles relied on by counsel for defendant in aid of their argument that Casey was plaintiff's agent and that his fraud practiced in the course of the employment should be imputed to plaintiff. Among them, we will mention the following:

"Although there formerly seemed to be some doubt as to the liability of a principal for his agent's fraud, it is now generally well settled that for the same reasons that a principal is liable for other torts of his agent, he is also civilly responsible for frauds committed by such agent in the course of his employment, and for the principal's benefit, although they were committed without the principal's knowledge or consent." "A principal who seeks to enforce a contract is bound by representations made by his agent in order to induce the opposite party to make it." "Agency is the legal relation which arises when one party, called the agent, is

authorized to represent and act for another party, called the principal, in bringing or to aid in bringing such principal in contractual relation with a third person, however, such authority may be conferred." "One who is entrusted with money for the purpose of changing it or having it changed is an agent. An agency may be implied . . . from the fact that one is put in possession of real property, given the custody of personal property, given a note to collect, put in charge of a business, given money to invest or pay over to another." "When parol authority is relied upon and is sufficient, proof of the existence of the relation of principal and, agent may be either direct or circumstantial, for the existence of the relation may be and often is inferred as a matter of fact from the relation of the parties, their conduct and other circumstances."

And, further, we will agree with defendant that in the application of these principles to the facts of the present case, the conclusion cannot be avoided that plaintiff did employ Casey as his agent to invest his money in a loan, and, had it been shown that Casey's connection with the transaction was as plaintiff's agent only, we would not hesitate to declare that any fraud perpetrated on defendant in the course of the employment, for the benefit of his principal, should be imputed to the principal whether or not the latter actually had knowledge of it. The doctrine that holds the principal to account for the acts of his agent is based by some writers on the fiction of the identity of principal and agent, while others place it on the ground that as it is the duty of the agent to follow the instructions of his principal and to render a full account of the manner in which the service has been accomplished, the presumption must be indulged that he has performed this duty and the principal, under the plainest rules of justice and morality, will not be permitted to enjoy a benefit from the agent's service and to disclaim responsibility for the

consequences of the wrongful act by which that benefit has been conferred. But this doctrine, as was pertinently said in Frenkel v. Hudson, 82 Ala. 158 (quoted with approval in Thompson-Houston Electric Co. v. Capitol Electric Co., 56 Fed. 849), "has no application, however, to a case where an agent acts for himself, in his own interest, and adversely to that of his principal. His adversary character and antagonistic interests take him out of the operation of the general rule, for two reasons: First, that he will very likely in such case act for himself, rather than for his principal; and, secondly, he will not be likely to communicate to the principal a fact which he is interested in concealing. It would be both unjust and unreasonable to impute notice by mere construction under such circumstances, and such is the established rule of law on this subject." Obviously, the doctrine cannot be applied in cases where the agent acquires an interest in the subject-matter that is opposed to the interest of his principal, nor in cases where he is acting in collusion to defraud his principal. When hostile self-interest steps in, the confidential relation is at an end and presumptions which ordinarily attend such relationship cannot be indulged. When defendant saw Casey's name signed to the note as one of the makers, he became charged with notice of the fact that in becoming one of the obligors Casey could not act in the role of agent for the payee and, consequently, that any misrepresentation made by Casey could not be imputed in law to the payee and, when plaintiff was informed by Casey that the latter and his associates whose names appeared on the note proposed to borrow the money and to obligate themselves to repay it, he learned a fact which, of itself, terminated the confidential relation and required him thereafter, if he would make that loan, to proceed on his own responsibility and at arm's length with his erstwhile agent. The employment of an agent to lend money does not carry with it the implied author-

ity to lend the money to himself and this rule sufficiently answers the suggestion that plaintiff should be held liable on the ground that, in selecting Casey as his agent, he placed the latter in a position to victimize defendant by means of fraudulent representations. What we have said is fully sustained by the authorities (Mechem on Agency, sections 721, 723; Story on Agency, section 210; Reinhard on Agency, section 356; Clark & Skyles on Agency, p. 1055; Ineriarity v. Bank, 1 N. E. 282; Allen v. Railroad, 15 Am. St. 1. c. 191; Gunston v. Lumber Co., 59 Am. St. 655; Kenneth Investment Co. v. Bank, 96 Mo. App. 125, 143; Smith v. Boyd, 162 Mo. 146; Merchants Nat. Bank v. Lovitt, 114 Mo. 519; DeSteiger v. Hollington, 17 Mo. App. 382), and disposes, adversely to the contention of defendant, of the first ground assigned for a reversal of the judgment.

## II.

Passing to the second proposition, we turn to Daniels on Negotiable Instruments, Vol. II (5 Ed.), section 1272, for a clear and compact statement of the principles which control the solution of the questions presented:

"There is no doubt that a negotiable bill or note given for or on account of a contemporaneous or pre-existing debt, and whether or not it be in renewal of a previous bill or note, suspends all right of action on such debt during its currency—that is, until it is dishonored by non-acceptance or non-payment. If this were not so, the creditor who took the additional security, in the form of a bill or note, might, in consequence of its negotiable character, transfer it to a bona fide holder, and subject the debtor to the payment of both the original and the new debt. But as soon as the bill or note is dishonored, the original debt revives, and the creditor may pursue his remedy for it, or sue upon the bill or note. The bill or note taken in conditional payment becomes by its dishonor, a collateral security, which the

creditor may retain and endeavor to collect, without forfeiting the right to proceed in the principal cause of action, subject to the obligation of surrendering up the bill or note at the trial." These principles have been recognized and applied repeatedly by the courts of this State. [Appleton v. Kennon, 19 Mo. 637; Jackson v. Bowles, 67 Mo. 615; Ashbrook v. Letcher, 41 Mo. App. 372; Drake v. Critz, 83 Mo. App. 650; Higgins v. Harvester Co., 181 Mo. 308; White v. Smith, 174 Mo. 186; Johnson v. Bank, 173 Mo. 171.]

The evidence shows that when plaintiff accepted the renewal note of four thousand dollars he surrendered the old notes to Mr. Casey, but it fails completely to show that the renewal note was accepted with the understanding that it was to operate as an absolute instead of a conditional payment of the debt or that the note in suit was to be cancelled and extinguished. In the absence of such proof, the presumption must be indulged that the renewal note was taken as a conditional payment only, and when default was made in its payment, plaintiff could treat it as a collateral security and found a cause of action on the original note. The only condition imposed on him by law was to account for the renewal note in order that defendant might not be compelled to pay the same debt twice and this, the evidence shows, he has done.

### III.

The last point made by defendant must be rejected for the reason, if for no other, that the issue he now seeks to inject into the case was set at rest by the pleadings. We concede that if Casey forged the name of Hinkle to the note in controversy after it had been signed by defendant, such alteration would afford defendant a complete defense. And, further, we will concede for argument, without so holding, that had defendant's verified answer contained nothing more than a general denial, he would have been entitled to make this defense, since

proof that the instrument had been altered after defendant signed it as surety would go to disprove the cause of action asserted and not to the establishment of a fact in avoidance. [Paris National Bank v. Nickell, 34 Mo. App. 295.] But the admissions and averments of the answer are inconsistent with the plea of *non est factum.* Defendant, in effect, admits that he executed the note in its present form, with the single exception that the name of the payee was not inserted until after he had signed the note and returned it to Mr. Casey. The two special defenses offered are in the nature of pleas of confession and avoidance. This admission curtailed the scope of the general traverse by excluding therefrom the defense of *non est factum.* As this is the only reasonable construction to be placed on the pleading, it follows that the learned trial judge committed no error in refusing defendant permission to avail himself of the issue fought out by plaintiff and defendant Hinkle. We might add that since the jury found against Hinkle on that issue, it is difficult to perceive how the error, if one were committed against defendant, could have been prejudicial, but we rule this point against defendant on the ground that the fact he would now contest was conceded by him in his answer.

The judgment is affirmed. All concur.