MARQUARDT SAVINGS BANK, Respondent, v. KATE FREUND, Appellant.

### Kansas City Court of Appeals, May 29, 1899,

1. Bills and Notes: STRANGER: PAYMENT V. PURCHASE: MAKER. If a maker acting for himself takes up from the bank his note, it is paid, but if he acts for another it will be purchase or payment according to the intention of the parties, since the payment of a note by a stranger is generally held to be a purchase and not a payment, and whether one or the other is a question of fact resting in the intention of the parties; and evidence in this case is reviewed and the intention of the transaction found to be a purchase and not a payment.

2. ———: PRINCIPAL AND SURETY: EXTENSION OF TIME: NEW NOTE. Where the holder of a note past due takes the principal note payable four months after date as collateral security to the former note, he thereby extends the time for the payment of the first note and discharges the surety thereon.

3. ———: ———: REVIVING DEAD SECURITY: PAYMENT. A security once dead can not be revived for any purpose, and the payment of a note releases the past due collateral security and discharges the surety thereon, and it can not be repledged so as to bind the surety.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED.

PHILLIP, SMITH & STREET for appellant.

(1) When a maker of a promissory note with his own money pays the amount due thereon to the holder, the transaction constitutes payment and releases the surety regardless of the intention of the parties. 24 Am. and Eng. Ency. Law, p. 819; Burnett v. Courts, 5 Harr & Johns (Md.) 78; Brandt on Suretyship [1 Ed.], sec. 292; 2 Daniels, Neg. Inst., secs. 1221, 1236, 1238; Swope v. Leffingwell, 4 Mo. App. 525, 534; Greening v. Patten, 51 Wis. 146; Felch v. Lee, 15 Wis. 291. (2) Did the German Savings Bank intend to purchase the note sued upon? (3) If the German Savings Bank took the note sued on as collateral security, it took its title as pledgee from Kermehs as pledgor. The note was then past due and the bank took it with all of its infirmities. As Kermehs could not sue the defendant, neither could the German Savings Bank, and she is therefore discharged. Mitchell v. Roberts, 17 Fed. Rep. 778; Hale on Bailments, p. 106; Jones on Pledges, sec. 1; Lancey v. Clark, 64 N. Y. 209; Eastman v. Plumer, 32 N. H. 238; Bank v. Lay, 80 Va. 436; Swope v. Leffingwell, 4 Mo. App. 525, 538; Greening v. Patten, 51 Wis. 146. (4) The German Savings Bank did not acquire title to the note sued on from the People's Savings Bank

because the People's Savings Bank did not either sell or pledge the note. Binford v. Adams, 104 Ind. 41, 43, 45; 2 Daniels Neg. Inst., sec. 1222; Bank v. Lay, 80 Va. 436; Dooley v. Ins. Co., 3 Hughes 221; Lancy v. Clark, 64 N. Y. 209; Eastman v. Plumer, 32 N. H. 238. (5) Swope v. Leffingwell, 72 Mo. 348, belongs to that class of cases governed by the rule, to wit: "Where a stranger to a note in no way liable to pay it furnishes the money to the maker with which to take it up, and the holder has knowledge of this fact, and upon receipt of the money assigns the note which is delivered to the stranger, this constitutes payment or a sale according to the intention of all the parties. It is therefore not applicable to the case at bar. We simply desire to call the attention of this court to the radical difference in the facts as found in that case by the supreme court, and those in the case at bar. (6) If the German Savings Bank purchased the note sued upon from the People's Savings Bank, the defendant surety is released by the extension of time of payment. Bank v. Wood, 56 Mo. App. 214; Barrett v. Davis, 104 Mo. 549. (7) The payment of a debt secured by collateral releases the collateral. Bank v. Lay, 80 Va. 436.

JOHNSON, RUSK & STRINGFELLOW for respondent.

(1) In this state the question of payment is purely a question of intention. Different obligations may be taken to evidence the same indebtedness and the taking of a new obligation as such evidence will not operate as a payment of any other obligation representing the same indebtedness, unless it affirmatively appears that such was the intention of the parties. Therefore, the accepting of the individual note of Kermehs due in four months by the German Savings Bank did not of itself operate as a payment or extinguishment of exhibit F. Both of these notes evidenced the same indebtedness. Swope v. Leffingwell, 72 Mo. 348; State ex rel. v. Wagers, 47 Mo. App. 438; Shotwell v. Munroe, 42 Mo. App.

677; Selby v. McCullough, 26. Mo. App. 66; Leabo v. Goode, 67 Mo. 126; Land Co. v. Rhodes, 54 Mo. App. 129; Riggs v. Goodrich, 74 Mo. 112; Jones on Pledges, sec. 17; Bank v. Gray, 19 Barb. 459; Ketchum v. Duncan, 96 U. S. 659; Dodge v. Freedman's Savings and T. Co., 93 U. S. 379; Carter v. Burr, 113 U. S. 737. (2) In order to release a surety, the creditor and principal debtor must make some arrangement by which the right of the surety to pay off the debt and proceed against the principal debtor is suspended. The execution of his individual note by Kermehs to the German Savings Bank did not operate as an extension of time of exhibit F. There was no time after the maturity of exhibit F that the defendant Kate Freund could not have paid off that note, and thereby have been subrogated to the rights of the holder against the principal maker. Rucker v. Robinson, 38 Mo. 155; Bank v. Johnson, 24 Mo. App. 318; Hosea v. Rowley, 57 Mo. 357; Bank v. Leavitt, 65 Mo. 562; Nichols v. Douglass, 8 Mo. 51; Bank v. Gardner, 57 Mo. App. 270.

SMITH, P. J.—This is a suit in equity which was brought to foreclose a deed of trust on certain real property, situate in Buchanan county in this state. The promissory note, which the said deed of trust was given to secure, was dated February 24, 1896, for $700 due four months after date, payable to the People's Savings Bank of STATEMENT. Des Moines, Iowa, and signed by Otto Kermehs, Mamie Kermehs and the defendant, Kate Freund, who, it is admitted, was surety thereon. The answer pleaded, first, payment of the note; and, second, that defendant was a surety on the note and was released by an extension of time given thereon by the holder without her consent. The decree was for the plaintiff and the defendant appealed.

Whether or not the deed of trust note was paid off and discharged prior to the commencement of the suit is the principal question presented for our decision. The material facts

of the case, as disclosed by the evidence, are about as follows: That Otto Kermehs and his wife, two of the makers of the said note, are husband and wife, the latter being the daughter of the defendant; that said Kermehs, desiring to use $700, applied to the People's Bank, the payee in the note, for a loan of that amount, proposing that if the said bank would loan him the amount applied for, that he would give his mother-in-law, the defendant, as surety on his note, and that she would give a deed of trust on certain valuable real property situate in Buchanan county, in this state, to secure the payment of such note; that the said bank, after having made inquiry in respect to the value of said real property sufficient to satisfy it as to the truth of the representations made by said Kermehs, agreed to make the loan and accordingly the said note and deed of trust sued on were executed and delivered to it and the money paid over to said Kermehs; that when the said note became due the bank declined to renew it and thereupon said Kermehs went to the German Savings Bank of Des Moines and had a talk with Mr. Gonoser, the cashier thereof, about changing the loan he had procured from the People's Bank to the German Savings Bank. He explained the matter very fully to the cashier. The latter testified that the former came in and made application for the loan, and said "he would give as collateral to secure us the same as the People's Savings Bank had, which was a deed of trust on some property down in St. Joseph." He said that he would have the papers assigned and put them up as collateral. He further testified that he did not then agree to enter into the arrangement proposed by said Kermehs, but took the application under advisement, and while so, Mr. Kohler, who was one of the directors of the bank, and a friend of said Kermehs, requested him to make the loan, provided he was satisfied with the security.

It appears that a few days after the application for the loan had been made by said Kermehs, the cashier informed

him that he was willing to extend the accommodation requested; that said Kermehs thereupon went to the People's Bank and inquired of the cashier whether or not, if his bank got the face of the note and interest, he would indorse the note over without recourse, and to which inquiry he received a favorable response. It may be fairly inferred that Kermehs immediately reported to the cashier of the German Savings Bank the response of the cashier of the People's Bank to his inquiry, for it appears that on that day the German Savings Bank let said Kermehs have $700, taking his note therefor, and that said Kermehs took the money over to the People's Bank, where it was received and the note indorsed by the cashier "without recourse" and handed over to said Kermehs, who delivered it to the cashier of the German Savings Bank. The deed of trust was later on delivered to Kermehs who turned the same over to the German Savings Bank.

The note which said Kermehs made to the German Savings Bank was a collateral note in form, in which was described the note and deed of trust which had been given to the People's Bank. The cashier of the People's Bank testified that in the transaction by which he received the $700 and indorsed the note "without recourse" he represented the bank, and that Kermehs represented the other parties. When the note was indorsed by the cashier of the People's Bank, he was requested by said Kermehs not to release the deed of trust until requested by him to do so; that the cashier of the German Savings Bank testified that he thought that said Kermehs was entitled to some credit but perhaps not to the extent of the loan made to him and that he did not rely wholly on the collateral note and deed of trust in extending credit to him.

It further appears that the German Savings Bank did not place the amount of money it loaned to said Kermehs to his credit on its books but paid the same over to him; that it relied upon his statement to the effect that he would take the

money so received to the People's Bank and with it procure the note and deed of trust, with indorsement of the cashier on the note, and bring the same over to the German Savings Bank. It further appears that the cashier of the People's Bank, when requested by defendant to release the deed of trust refused to do so unless he was first satisfied that the note was paid. It further appears that when the individual note of Kermehs to the German Savings Bank matured, he paid $200 thereon and gave another collateral note in lieu thereof for $500, payable on demand; that this note, with the collateral note and deed of trust, was held by the said bank until it went into a receiver's hands; that the receiver required said Kermehs to pay the note, and thereupon he requested of the plaintiff bank a loan of $500 to pay off his note held by the receiver, and to secure such loan he offered the plaintiff the same security that was held by the receiver. The plaintiff bank agreed to make the loan on the terms proposed. The transaction was consummated by Kermehs giving the plaintiff his collateral note, payable on demand, for $500. This amount was placed to the credit of Kermehs on the books of the bank. The cashier of the plaintiff then went to the receiver and gave him a certificate payable to his order and received the Kermehs notes and the deed of trust.

The individual note was paid off and delivered by the cashier to said Kermehs. The other note secured by the deed of trust was retained by the cashier as collateral security to the demand note which said Kermehs had given the bank for the loan. There was no indorsement by the receiver of either of the notes to the plaintiff. Said Kermehs failed to pay either the demand note or the deed of trust note.

If Kermehs, the principal in the deed of trust, acting in his individual capacity, paid off the deed of trust note held by the People's Bank, that, of course, discharged the defendant as surety and killed the security. But if he was acting for the German Savings Bank in pursuance of an agreement

BILLS and notes: stranger: payment v. purchase: maker.

entered into by him with it, then the transaction was not a payment but a purchase. Where a note is paid by a stranger, it will, in general, be held to be a purchase and not a payment. And whether it is one or the other is a question of fact. And in such transaction the intention of the parties thereto governs. Randolph on Com. Pap., secs. 1438, 1439 and 1440; Barbour's Law of Payment, secs. 10, 11; Campbell v. Allen, 38 Mo. App. 27; Swope v. Leffingwell, 72 Mo. 348; Allen v. Dermott, 80 Mo. 56; Thomas v. Furton, 5 Dow. & L. 28; Dodge v. Freedman, 3 Otto, 379; Ramsay v. Daniels, 1 Mackey, 16; Hartshorn v. Brace, 25 Barb. 126; Horton v. Manning, 37 Tex. 23. It seems to us that the facts and circumstances shown by the undisputed evidence in this case are such as to render irresistible the conclusion that it was the intention of all the parties that the transaction should be a purchase and not a payment. It is clear that it was the intention and understanding of both the German Savings Bank and Kermehs that the $700 which it placed in his hands was to be taken by him and used in the purchase of the note and deed of trust held by the People's Bank. There is nothing in the evidence satisfactorily showing that it was the intention of the German Savings Bank, in making the loan to Kermehs, to furnish him with money to pay off his secured note to the People's Bank. The loan would not have been made by the German Savings Bank had it supposed that it would not acquire title to the note held by the People's Bank. It was induced to make the loan on the strength of the assurance that the People's Bank, in consideration of the payment to it of the $700, would pass by indorsement and delivery the title of the note to it. We think Kermehs acted for the German Savings Bank and not for himself in the transaction.

The cashier of the People's Bank, as he testified, understood that Kermehs was acting not for himself but for others. This is further shown by his refusal to release the deed of trust. If he had understood that the money received by him

of Kermehs was a payment by him of the note, why did he, after the note had passed out of his hands, refuse to release the deed of trust until satisfied that the note had been paid? He knew that Kermehs in the transaction was representing some one who was thereby acquiring title to the note. We have no difficulty in arriving at the conclusion that the intention of all the parties to the transaction was that it should be a purchase and not a payment of the note, and if in determining whether the transaction was a purchase or a payment the intention of the parties governs, then we must hold that the German Savings Bank by purchase acquired the title to the said note and deed of trust, and that the same was then a live security in its hands.

But it is contended that the effect of the act of the German Savings Bank in taking from Kermehs a new note payable four months after date, for the same debt which was evidenced by the note and deed of trust that had been given by Kermehs and the defendant, which ——: principal and surety: extension was then overdue, was to discharge the deof time: new note. fendant as surety on the deed of trust note. When the bank acquired by purchase the note and deed of trust it thereby became the owner of the debt so evidenced, and when it took Kermehs individual note for the same debt it thus had two notes to evidence but a single debt. The taking of the individual note of Kermehs, payable four months after date, at a time when the deed of trust note was due, could have no other effect than to extend the time of the payment of the debt so evidenced. The object of taking the individual note was to give Kermehs more time in which to pay the debt. The defendant could have paid off the deed of trust note at any time, but she could not thereby have acquired any right of action against Kermehs, the principal, until after the maturity of his individual note to the German Savings Bank. If a surety pay the debt of his principal before that debt becomes due,

he can have no right of action against his principal until the maturity of such debt. White v. Miller, 47 Ind. 385.

Had defendant paid off the debt of Kermehs, she would have been subrogated to the rights of the German Savings Bank, but it had no right to sue Kermehs until the maturity of the debt evidenced by his individual note. The defendant, by making the payment would, by subrogation, have taken the place of the German Savings Bank, and been compelled to wait until the maturity of the individual note of Kermehs before she could sue. Her right of action was therefore suspended until that time. She would have no right to proceed immediately against her principal on the payment of the deed of trust note.

If the bank had sued Kermehs on the deed of trust note he could have successfully defended the suit on the ground that the debt thereby evidenced had been extended by the taking of the new note. If the defendant had required the bank to bring suit against Kermehs on the deed of trust note it could not have done so for the reason the debt was not then due. The bank tied its own hands—it had disabled itself to take any step towards enforcing the collection of the debt until the maturity of the new note. The taking of the new note of Kermehs, under the authorities, we think, had the effect to extend the time of the payment of the debt and the consequent discharge of the defendant as surety on the collateral note. Bank v. Wood, 56 Mo. App. 214; Barrett v. Davis, 104 Mo. 549; Bank v. Leavitt, 65 Mo. 567; Kincaid v. Yates, 63 Mo. 45.

The security was dead when it reached the hands of the plaintiff. It was then overdue and the plaintiff succeeded to exactly the same rights, and none other, in respect thereto, that the German Savings Bank had. It was a dead security which could not be revived or made available ——:——: reviving by plaintiff for any purpose. Even if the security dead security: payment. was alive in the hands of the German Savings Bank, yet the payment by plaintiff of the individual

note of Kermehs, then in the hands of the receiver, resulted in the discharge of the defendant and the release of the collateral security. The security was thereby set free, and neither Kermehs nor any one else could have pledged it to plaintiff for any purpose without the consent of the defendant.

It follows that the judgment will be reversed. Gill, J., concurs; Ellison, J., concurs in result.