Stough v. Healy.

W. A. STOUGH V. E. J. HEALY & CO., *a Partnership.*
No. 14,972  (89 Pac. 898.)
SYLLABUS BY THE COURT.

NEGOTIABLE INSTRUMENTS—*Obligation to Accept a Draft—Limitation.* No obligation to honor any draft excepting one for the price of stock shipped to the drawee is assumed by a live-stock commission firm in writing thus to a bank: "We will honor Mr. Payne's draft for one thousand dollars on hogs or cattle. Should he want more at any time, have him call us by phone and we will make arrangements to handle his stock. We limit our customers as we have to keep our bank account up here."

Error from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed April 6, 1907. Affirmed.

*Stanley, Vermilion & Evans,* for plaintiff in error.
*Brubacher & Conly,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: E. J. Healy & Co., live-stock commission merchants of Wichita, wrote to the Citizens Bank of Braman, Oklahoma, as follows:

"HEALY & CO.,
Live Stock Commission Merchants.
Market reports furnished.
WICHITA, KAN., 12/2, 1902.
*Citizens Bank, Braman, O. T.:*
SIRS—Your letter recd. In reply will say that we will honor Mr. Payne's draft for one thousand dollars on hogs or cattle. Should he want more at any time, have him call us by phone and we will make arrangements to handle his stock. We limit our customers as we have to keep our bank account up here; we think Mr. Payne O. K. We presume this is all you want, as it is all that is required of us by any other bank.
Yours in sincerity,
E. J. HEALY & CO."

The contents of the communication thus replied to are not shown. Upon the strength of this letter the

bank cashed a draft for $296.60, drawn by Payne upon Healy & Co. The drawees refused to pay it and action was brought against them upon it by W. A. Stough, to whom it had been assigned. A verdict was given for the defendants, upon which judgment was rendered, and the plaintiff prosecutes error.

An instruction was given to the effect that the letter was not an agreement to pay any draft except such as should be drawn on account of cattle or hogs shipped by Payne to Healy & Co., or at all events none except such as the bank should believe to be drawn upon that account. The plaintiff in error maintains that it was a promise to pay any draft within the amount named, without regard to the use made of the proceeds or to the shipment of any stock to the drawees. The only question necessary to be determined is, Which of these positions is correct? We agree with the trial court. There are many cases, of which *Posey v. Bank*, 24 Colo. 199, 49 Pac. 282, is an example, holding that a letter of this nature is to be strictly construed against the writer, on the ground that it is his duty to give clear expression to any limitation he intends to place upon his liability. This principle, however, does not require or justify a strained or unreasonable construction. In the present instance the letter-head used must have advised the bank that Healy & Co. were engaged in the business of selling live stock on commission. The reference to their practice of limiting their customers indicated plainly that they regarded Payne in that light—that is, as one who would ship stock to them for sale—and made the agreement to pay his drafts with that in mind. The statement that if he should want more than the thousand dollars they would upon notice arrange to handle his stock has the same effect. In view of these considerations their promise to honor his drafts "*on* hogs or cattle" could have but one reasonable meaning—that they would take care of

such drafts as should be drawn against or on account of live stock shipped to them for sale.

No cases to which our attention has been directed conflict with this conclusion, although several may seem to have a tendency in that direction. The case of *Coffman et al. v. Campbell & Co.*, 87 Ill. 98, turned upon the construction of a telegram reading, "Will pay A. Harper draft, twenty-three hundred dollars, for stock," sent in answer to the inquiry, "Will you honor draft drawn by A. Harper for twenty-three hundred dollars?" It was contended that no obligation was thereby assumed excepting to pay a draft made for the purchase of stock which was shipped to the drawee. The supreme court denied this contention, although two justices dissented. There is a great and manifest difference, however, between the expressions "for stock" and "on stock." The one merely relates to the use the drawer is to make of the money he obtains for the draft; the other is equivalent to "against stock," and clearly implies that the draft is to be drawn upon the strength of the stock—that the stock is to be made in a way security for the draft. And where the phrase is used by commission merchants it requires no evidence of a custom to show that the character or security meant is that resulting from a shipment to them of the live stock purchased with the proceeds of the draft.

In *Charles L. Bissell v. William Lewis et al.*, 4 Mich. 450, the drawees of a bill of exchange gave their agent a letter of credit reading:

"To enable you to make advances on grain or other produce to be consigned to us, or for us at Oswego, during the ensuing fall, you are at liberty to make drafts on us in amounts necessary for such operations, on such terms as you can make advantageously for us."

The court held that this was an unconditional authority to the agent to draw upon his principals; that one who cashed his draft upon the strength of it thereby acquired an absolute demand against them, whether

or not any shipment was in fact made. That decision is entirely consistent with what has been said here. The letter contained no suggestion of the drafts' being made upon or against the produce. The agent was empowered to raise funds to *enable* him to do certain things. They who supplied the funds were not charged with the responsibility of seeing that he faithfully performed his duty; so that as they did not knowingly assist him in perpetrating a fraud it was a matter of indifference to them what use he made of the money.

A very similar case is *Merchants' Bank v. Griswold,* 72 N. Y. 472, 28 Am. Rep. 159. There the letter of credit read:

*"To whom it may concern:*

"This is to certify that I hereby authorize Horace Loveland, as my agent, to make drafts on me, from time to time, as may be necessary for the purchase of lumber for my account, and to consign the same to the care of P. W. Scribner & Co., Whitehall, N. Y." (Page 476.)

In the opinion is was said:

"Here the authority was to draw bills to the extent necessary to purchase lumber. By the act of procuring the discount upon the faith of the authority, the agent represented both the necessity and the purpose, and it was proved besides that actual representations were made to the same effect. According to the authorities cited the principal is bound by these representations, and as to the plaintiff they are to be deemed true. We have then the case of an absolute authority to draw for the principal for any amount necessary for the purpose specified, and we have the representations of the agent, for which the principal is bound, that the necessity exists for the purpose named. The person discounting the bill need inquire no farther. . . . I do not think that the requirement to ship the lumber to a designated place can be regarded as a condition to the exercise of the power to draw. The liabilities of the parties were fixed at the time the draft was taken and the money advanced upon it. The act of shipping was to be performed subsequently, and to be performed

by the agent of the defendant, who had confided to the agent the power and discretion in respect to that act. These directions were in the nature of instructions to the agent, rather than a limitation upon the power to draw drafts." (Pages 478, 480.)

These extracts show that the principles governing the decision can have no application to the facts of the present case.

The judgment is affirmed.