CITIZENS BANK OF WINONA, Appellant, v. EUGENE E. EVANS et al., Respondents.

St. Louis Court of Appeals, July 16, 1913.

1. GUARANTY: Discharge of Guarantor. The extension of time for payment of a debt, through a valid agreement between the creditor and the principal debtor, operates to discharge a guarantor of the debt who did not consent thereto.

2. ————: ————: Bills and Notes: Payment. Where promissory notes were executed under an agreement that an overdue

note for the same indebtedness should be held as collateral security therefor, the guarantors on the overdue note, who did not consent to the agreement, were discharged, as there was a constructive taking up of the prior note by the makers and a reissue thereof as collateral.

3. ——————: ——————: Extension of Time for Payment. Where promissory notes were executed under an agreement that an overdue note for the same indebtedness should be held as collateral security therefor, and interest on the new notes was paid in advance to maturity, the guarantors on the overdue note, who did not consent to the agreement, were discharged, as the agreement prevented action on the prior note until the maturity of the new notes, and hence operated as an extension of time for payment of the prior note.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant.

(1) The guaranty in this case is absolute, and the liability of the guarantors is commensurate with that of principal debtor, and no demand and notice of non-payment was necessary to bind the guarantors; nor was it necessary for the creditor, the plaintiff, to use any diligence to enforce payment from the principal debtor. Printing Company v. Belcher, 127 Mo. App. 140; Wright v. Dyer, 48 Mo. 525; Barker v. Scudder, 56 Mo. 272; Singer Mfg. Co. v. Hester, 71 Mo. 91; Machine Co. v. Jones, 61 Mo. 409; Airey v. Pearson, 37 Mo. 424; Hill v. Combs, 92 Mo. App. 252; Globe v. Bickley, 73 Mo. App. 499; Osborn v. Lawson, 26 Mo. App. 549; Warder v. Johnson, 114 Mo. App. 574; English v. Siebert, 49 Mo. App. 563; Baskin v. Cruse, 66 Mo. App. 22; Miller v. Mellier, 59 Mo. 388; Kroneg v. Bramlett, 20 Mo. App. 636; 14 Am. & Eng. Ency. of Law (2 Ed.), pp. 1141, 1149, 1154; 20 Cyc. 1459; Brant on Suretyship, secs. 217, 218. (2) The law is well established in this State that before the guarantors

or surety can be released by an extension of time, there must be a binding contract between the debtor and the creditor upon sufficient consideration granting such extension. Barrett v. Davis, 104 Mo. 558; Commercial v. Brinkerhoff, 110 Mo. App. 438; Real Estate Co. v. Clark, 84 Mo. App. 167; Johnson v. Franklin Bank, 173 Mo. 171; White v. Middleworth, 42 Mo. App. 368; Owens v. McKenzie, 133 Mo. 323; Kingman v. McMasters, 118 Mo. App. 217; Brown v. Profit, 53 Miss. 549; Moore v. Redding, 69 Miss. 842. (3) A mere promise of indulgence, though upon sufficient consideration, if for no certain time, does not tie up the hands of the creditor for a day, or for any time whatever, and for this reason does not release the surety. Commercial v. Brinkerhoff, 110 Mo. App. 438; Barrett v. Davis, 104 Mo. 558; Johnson v. Franklin, 173 Mo. 171. (4) The rule is well established that the mere taking of a new note for an original debt to be used as collateral will not release the guarantor in the absence of a special agreement granting an extension. Bank v. Rogers, 123 Mo. App. 571; Rucker v. Robinson, 38 Mo. 154; Bank v. Johnson, 24 Mo. App. 316; Bank v. Leavitt, 65 Mo. 562; Globe v. Carson, 31 Mo. 218; Kingman v. McMasters, 118 Mo. App. 217; Henlee v. Jones, 43 Mo. 235; Noll v. Oberhellman, 20 Mo. App. 336; Buckingham v. Walker, 48 Miss. 619; Penny v. Crane Bros., 80 Ill. 244; Bank v. Wolsey, 31 App. Div. (N. Y.) 61; Belting Co. v. Parker, 21 App. Div. 160; Shipman v. Kelly, 16 Misc. (N. Y.) 673; Parmalee v. Thompson, 45 N. Y. 58; Graham v. Megus, 55 Hunn. 448; Foster v. Hester, 119 N. W. 1044; Brant on Suretyship and Guaranty (3 Ed.), sec. 453; Austin v. Curtis, 31 Vt. 64. (5) The receipt of interest in advance for a debt does not furnish any evidence of a binding contract for an extension of time of payment so as to operate to release the guarantors. Bank v. Rogers, 143 Mo. App. 571; Hozea v. Towney, 57 Mo. 357; Citizens Bank v. Moor-

man, 38 Mo. App. 486; Russell v. Brown, 21 Mo. App
57; Stilwell v. Aaron, 69 Mo. 539; Jos. Fire v. Hauck,
71 Mo. 465. (6) The evidence is undisputed that the
note in suit was always in the possession of the plain-
tiff bank. It is therefore impossible that it was ever
pledged, because actual delivery to the pledgee is es-
sential to constitute a valid pledge. Staple v. Simp-
son, 60 Mo. App. 75; Vastone v. Goodwin, 42 Mo. App.
39; Christian v. Atlantic, 133 U. S. (33 L. Ed.) 589.
(7) Even if the note in suit had been pledged, this
could not affect the liability of the guarantors, because
the guaranty is absolute and the liability is primary
and not secondary. Printing Co. v. Belcher, 127 Mo.
App. 140; Wright v. Dyer, 48 Mo. 525; Baker v. Kelly,
41 Miss. 696.

*Lyon & Swarts* for respondent..

(1) Whether the new notes given in October,
1905, and in May, 1906, satisfied, paid and discharged
the note in suit, or whether at those times the appel-
lant and the maker entered into binding contracts, for
sufficient consideration, granting extensions of time,
were questions of fact duly submitted to the trial
court. The findings by the trial court are equivalent
to a verdict by a jury and are conclusive where the
findings are supported by substantial evidence, and no
citation of authorities on that point is necessary. (2)
The new notes given in October, 1905, and in May,
1906, discharged the guarantors, whether the new
notes be considered as payment or agreements for ex-
tension of credit. Bank v. Wood, 56 Mo. App. 214;
Owen v. Bray, 80 Mo. App. 526; Donovan Co. v. Clark;
84 Mo. App. 169; Jackson v. Bowles, 67 Mo. 609; Bank
v. Freund, 80 Mo. App. 657; Keyser v. Hinkle, 127
Mo. App. 75; Appleton v. Kennon, 19 Mo. 637; Savings
Ass'n. v. Helmerick, 57 Mo. 100; Bank v. Leavitt, 65
Mo. 652; Stillwell v. Aaron, 69 Mo. 539; Johnson v.
Bank, 173 Mo. 171; White v. Smith, 174 Mo. 186;

Green v. Skinner, 75 Miss. 254; Fellows v. Prentiss, 3 Denio 517; Ogden on Negotiable Instruments, sec. 227; Daniel on Negotiable Instruments, sec. 1789. (3) Appellant, both in October, 1905, and May, 1906, tied its hands respecting the note in suit, because it obtained money from its correspondents on pledging, as collateral, the new notes of the Flake & Neilson Company, which company had in turn pledged the note in suit as collateral thereto. As between the appellant and its correspondents, the note in suit was pledged although it remained in appellant's possession. Bank v. Trust Co., 135 Mo. App. 379; Bank v. Freund, 80 Mo. App. 666; Bank v. Wood, 56 Mo. App. 218; Keyser v. Hinkle, 127 Mo. App. 75. (4) Notice to respondents of nonpayment was withheld by agreement between the appellant and the maker for a period of almost five years; and the respondents lost their rights and remedies against the maker and their co-guarantors, and were thereby discharged   Grube v. Stille, 61 Mo. 475; Bank v. Leavitt, 65 Mo. 562; 2 Parsons on Bills & Notes, 241; Thrasher v. Ely, 2 Sm. & M. (Miss.) 139. (5) Appellant voluntarily released to the maker collateral pledged by the maker to the note in suit, sufficient to have paid the note, and thereby released respondents. English v. Seibert, 49 Mo. App. 567; Ogden on Negotiable Instruments, sec. 227. (6) Appellant's failure to return to the maker, or to account for the two notes given in May, 1906, operates as a complete bar to maintaining any action on the note in suit. Jackson v. Bowles, 67 Mo. 609; Appleton v. Kennon, 19 Mo. 637; Keyser v. Hinkle, 127 Mo. App. 75; Graham v. Negus, 55 Hun, 443. (7) The contract of guaranty must be construed as any other mercantile contract, not strictly or technically, but in the light of what may be fairly presumed to have been the intention and understanding of the parties. The four guarantors of the note in suit, as between themselves contracted with the appellant to pay the note

at maturity in April, 1903, or at any reasonable time thereafter. · Kansas City v. Youmans, 213 Mo. 166; Merrill v. Baker, 186 Fed. 314; Douglas v. Reynolds, 7 Pet. 126; Johnson v. Norton Co., 159 Fed. 364; Kearnes v. Montgomery, 4 W. Va. 40; Harvey v. Bank, 56 Neb. 320.

NORTONI, J.—This is a suit against the guarantors on a promissory note. A jury was waived and a trial had before the court. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

It appears that the Flake & Neilson Company, incorporated, was engaged in a mercantile business in Winona, Mississippi. On December 4, 1902, this concern, the Flake & Neilson Company, executed its promissory note to the plaintiff bank, whereby it promised to pay, for money borrowed from the bank, $5000 four months after date. The two defendants, E. E. Evans and J. J. Jacobs, both residents of St. Louis, Missouri, by a proper indorsement on the back of the note, made at the time, guaranteed its payment. By such indorsement, the defendant guarantors waived notice and protest and guaranteed the payment of the note "at maturity or at any time thereafter." Interest at eight per cent from date is stipulated for in the note. It appears that the principal—that is, the Flake & Neilson Company—paid the interest on the note from time to time during the several years, but the note itself remained unpaid on October 1, 1905. On that date, the principal obligor, the Flake & Neilson Company, paid the interest then accrued, and there appears a credit on the back of the note therefor, as of date October 1, 1905, to the amount of $1,134.45. After having thus settled the matter of accrued interest, the plaintiff bank and the principal debtor, the Flake & Neilson Company, through its president, Mr. Flake, drew up two new notes, both of date October 1, 1905,

the first for $2550 and the second for $2566.66. By their terms the first note was payable on the 15th day of January, 1906 and the second note on the first day of February, 1906. These notes included the interest on the principal amount until the time of payment prescribed. It is conceded that they represented the identical principal indebtedness as that for which the original $5000 note was given on December 4, 1902.

Both of these notes were indorsed by Mr. Flake, the president, and Mr. Kelso, a stockholder of the Flake & Neilson Company. But these defendants—that is, Evans and Jacobs, the guarantors on the original note—were in nowise apprised of the transaction and did not consent thereto. Thereafter, on May 12, 1906, the principal debtor, the Flake & Neilson Company, through its president, Mr. Flake, took up the two notes last described, and for the same indebtedness executed to plaintiff two other notes on that date for $2500 each, payable, respectively, on the twelfth day of February, 1907 and the twelfth day of March, 1907. It appears the plaintiff bank required a higher rate of interest at that time, and the Flake & Neilson Company paid the interest at ten per cent in advance on the two last mentioned notes. Both Mr. Flake, the president of the Flake & Neilson Company, and Mr. Kelso, a director therein, individually indorsed the two last mentioned notes as well, and, as before said, those theretofore given, of date October 1, 1905, were taken up. All of these notes—that is, the two notes executed October 1, 1905 and the two executed May 12, 1906—contained a stipulation to the effect that they were secured "by collateral security by note of E. E. Evans and others"—that is, according to all of the testimony, the original note here in suit, executed December 4, 1902, and on which defendants Evans and Jacobs are guarantors.

It is conceded throughout that neither of the defendant guarantors consented to or were even apprised

in anywise of the transactions between the plaintiff and the principal debtor by which the four notes were given. The evidence for plaintiff tends to prove that the bank did not intend to release the two defendant guarantors on the original note here sued upon, through taking the four notes last above described. Touching this matter, it is said that such new notes— that is, the two notes executed by the principal debtor to the plaintiff October 1, 1905, and those executed in liquidation of them on May 12, 1906—were intended by the plaintiff bank and Mr. Flake, who, as president, represented the principal debtor—that is, the Flake & Neilson Company—to be accommodation notes. Both the cashier of plaintiff bank and Mr. Flake testify the same concerning this matter. It is said the bank desired to borrow money from other banks in New York and wanted "live" paper to pledge as collateral therefor. Because of this, the arrangement was entered into between the plaintiff bank and Flake, representing the principal debtor, whereby the new notes were to be executed, and the original note now in suit, on which defendants are guarantors, was to be held by the plaintiff bank as collateral to such new accommodation notes.

It is urged the court erred in the matter of giving and refusing declarations of law, but, in the view we take of the case, we regard the arguments touching this matter as wholly immaterial. It is obvious that no right of recovery appears on the original note against these guarantors, who were in nowise advised of, nor consented to, the subsequent transactions involving the same indebtedness. There can be no doubt that, when a precise and definite time is given to the principal debtor by a valid agreement which ties up the hands of the creditor from enforcing the debt, though it be for only a single day, the surety is discharged. [Johnson v. Franklin Bank, 173 Mo. 171, 73 S. W. 191.] Though it be that the taking of a new note does not in

all cases conclusively extend the time nor operate a discharge of the surety on the old note, since it is competent to show that such was not intended and may not result in every instance, as declared in Miners', etc., Bank v. Rogers, 123 Mo. App. 569, 100 S. W. 534, it is entirely clear that the transactions above stated amount in law to a discharge of the defendants. From the testimony of Mr. Flake, it appears that the parties intended to execute the new notes as accommodation notes and that the plaintiff should hold the original $5000 note here in suit as collateral thereto. Moreover, this agreement was expressly written into the new notes executed by the principal debtor, the Flake & Neilson Company, on October 1, 1905 and May 12, 1906, as appears from the testimony of plaintiff's cashier. The plaintiff's cashier testifies concerning the stipulation contained in these notes, "That they were secured by collateral security of note of E. E. Evans and others." It is entirely clear that this contract operated in law to extinguish the indebtedness represented in the old note and to revest the note in the original makers who immediately reissued it to the plaintiff as collateral for the new notes. It is certain that the Flake & Neilson Company could not pledge the prior note as security unless they became the owners of it—that is, first took it up and reissued it. The evidence is conclusive that such was the course pursued. The execution of the new notes for the same amount must, therefore, be regarded as extinguishing the old or prior note, in order to effectuate the pledge contract stipulated in the new notes.

Considerable stress is laid in the argument on the fact that the bank at all times retained possession of the old note and did not surrender it to the Flake & Neilson Company. Obviously this was as it should be in order to effectuate the pledge provided for in the new notes and contemplated by the parties. The principal debtor, the Flake & Neilson Company, in

executing the new notes and stipulating a pledge of the old, stood in the position as though it had taken up and was redelivering as through a reissue of the old note to the plaintiff bank. Such is constructively true.

Furthermore, there can be no doubt that the execution of the new notes, after the prior note was overdue, operated as an extension of the time of payment of the original debt for a definite and fixed period, which, together with the payment of interest in advance, afforded a sufficient consideration. Otherwise no consideration whatever obtained for the new notes, and it is certain that plaintiff was not entitled to hold and enforce both at the same time. [See Bank v. Freund, 80 Mo. App. 657.] The right of action must have been suspended on the original note during the time, for plaintiff had received the interest in advance to forbear payment of the identical indebtedness represented in the first note evidenced likewise by the subsequent notes. [See Bank v. Leavitt, 65 Mo. 562; Ogden, Neg. Inst., sec. 227; Bank v. Freund, 80 Mo. App. 657.]

The law is thus stated in Daniels, Negotiable Instruments, vol. 2 (5 Ed.), sec. 1272:

"There is no doubt a negotiable bill or note given for or on account of a contemporaneous or pre-existing debt, and whether or not it be in renewal of a previous bill or note, suspends all right of action on such debt during its currency; that is until it is dishonored by nonacceptance or nonpayment. If this were not so, the creditor who took the additional security in the form of a bill or note might in consequence of its negotiable character transfer it to a bona fide holder and subject the debtor to the payment of both the original and the new debt." [See, also, Keyser v. Hinkle, 127 Mo. App. 62, 75, 106 S. W. 98.]

It is entirely clear that the defendants were discharged, through the operation of law, both by, first,

the transaction which constructively took up the original note on which they were indorsers and reissued it as a pledge to the plaintiff bank as a security for the new notes, and, second, because the new notes together with the payment of interest in advance essentially operated an extension of time on the principal debt without their consent.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.