**FIRST STATE BANK, Respondent,**

v.

**Frank BENSON, III, and Levita Benson, Appellants.**

**No. WD 30898.**

Missouri Court of Appeals, Western District.

March 2, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1981.

Application to Transfer Denied May 11, 1981.

Richard A. King, Independence (Constance, Slayton, Stewart & King, Independence, of counsel), for appellants.

Kenneth I. Grissinger, Kansas City, for respondent.

Before PRITCHARD, P. J., SWOFFORD, J., and MURPHY, Special Judge.

PRITCHARD, Presiding Judge.

The issue is whether appellants are liable on a written guaranty for a promissory note given by Certified Meats, Inc., to respondent because of alleged extensions given on the note after appellants had given notice of cancellation of the guaranty.

The facts are these: Appellant, Frank Benson, III, in 1972 began an association with Leonard Adkins with Certified Meats, Inc., a wholesale meat distribution company. Adkins desired to increase the scope of the operations of the company in part by purchasing and reselling at wholesale perishable pork products. Because the packers of that product demanded payment in advance in cash and because of high risk, there was necessitated a source of credit for Certified Meats, Inc. Benson approached respondent, and an agreement was reached where credit would be extended to Certified Meats, Inc., up to $100,000. As a part of the security, as requested by respondent, appellants signed a guaranty agreement for all loans made to Certified Meats, Inc., which it might not repay. The pertinent terms of the guaranty agreement were: The guarantors (Frank Benson, III and Levita Benson; Leonard G. Adkins and Mary Beth(?) Adkins), requested that respondent give credit to Certified Meats, Inc., from time to time, and on doing so "hereby promises and agrees to make to you prompt payment, as they severally mature, of all overdrafts by the borrower, of all loans made or which may be made by you to the borrower, and of all notes, acceptances and other paper which have been or may be by you discounted for the borrower, whether made, drawn, accepted, endorsed or not endorsed by the borrower, as well as any and all renewals thereof. This is intended to be a continuing promise and agreement, and shall apply to cover any and all such overdrafts, loans, discounts, and renewals made prior to notice in writing given your cashier that the undersigned will not be liable upon any such overdrafts, loans or discounts made after the receipt of such notice. When any such overdrafts, loans or paper, or any renewal thereof, shall become and remain due and unpaid, the undersigned will, on demand, pay the amount due thereon * * *; (to $100,000). Authority and consent are hereby expressly given said Bank from time to time, and without any notice to the undersigned, to give and make such extensions, renewals, indulgences, settlements and compromises, of overdrafts, loans or paper as it may deem proper with respect to any of the indebtedness, liabilities and obligations covered by this guaranty. * * *." The instrument is dated November 4, 1974.

Thereafter, Certified Meats, Inc., borrowed money from respondent at various times at 1% over the prime rate of interest. All notes, being made on demand, were paid within a short time, the longest period of time being about four months. The last remaining note, which is the basis of this action is one in original amount of $20,000, dated June 13, 1975. It, like others, was signed "Certified Meats, Inc. By Frank Benson III Treasurer."

On June 10, 1975, Frank Benson, III, accepted an offer of Certified Meats, Inc., made by Adkins as president, to buy his stock therein, agreeing to resign as officer and director thereof. He then left for a European vacation, and on returning, the Bensons gave written notice to respondent that as of the date of the letter, September 25, 1975, they were withdrawing their personal guarantee for Certified Meats, Inc. Respondent received the notice September 29, 1975. The letter informed respondent that the Bensons had sold their stock back to Certified Meats, Inc., and were then working for the corporation with no ownership of stock. At that time the principal balance on the demand note of June 13, 1975, was still $20,000. Thereafter, in July and August, 1975, three new loans were made to Certified Meats, Inc., apparently executed by Adkins as president, all of which were paid in full with interest by September 2, 1975.

From September 12, 1975, payments were made on the principal of the June 13, 1975, note reducing its balance as of March 23, 1976, to $14,000. In answer to an interrogatory as to what the terms of the extension agreement pursuant to which payments were made after December 10, 1975, respondent said, "On May 10, 1976, an agreement with Leonard G. Adkins, of Certified Meats, Inc., and Robert G. McCray, President of First State Bank, in that Certified Meats, Inc., would pay $1,000.00 a week, each Friday, beginning May 14, 1976, until paid in full, credit the $1,000.00 to principal and bill Certified Meats, Inc. for the interest."

Payments were made on the principal of the June 13, 1975, note reducing it to $8,000. Action on appellants' guaranty was then filed for that amount, and the trial court granted judgment for the principal and interest upon a directed verdict for $10,068.15 against them. Judgment on a cross-claim of appellants was for the same amount against Certified Meats, Inc. only.

The guaranty agreement in question provides that it shall be construed in accordance with the law of the State of Kansas. Counsel for appellants states that according to his research there is no difference in Kansas and Missouri law on guaranties. Cited, however, is *George E. Failing Co. v. Cardwell Investment Co.*, 190 Kan. 509, 376 P.2d 892 (1962), which is instructive as to general principles. In that case a condition precedent to the guaranty of payment was that the debtor, McPeters, approve all invoices before payment by Cardwell, the guarantor. The guaranty also contained the sentence, "Please mail copies of invoices to us as made for our knowledge of what is purchased." An invoice for drill pipe rentals was not sent to Cardwell until seven months after McPeters had procured the drill pipe for his use, held not to be within the written terms of the guaranty, by reason of which the guarantor was discharged. The court likened the guaranty to a letter of credit, saying at page 898, "Furthermore, the liability of the guarantor depends upon conformity with the procedural terms set forth in the letter of credit. If its provisions have not been met, the letter affords no security. (24 Am.Jur. Guaranty, § 25, p. 891.) *Stough v. E. J. Healy & Co.*, 75 Kan. 526, 89 P. 898, 10 L.R.A., N.S. 918, is a case which illustrates the enforcement of a construction strictly in accordance with the terms of such an arrangement." And further at page 898[7–8], the court observed: "Even compensated guarantors are not liable when the original contract on which their undertaking was made is materially changed without their assent. A gratuitous or accommodation guarantor is discharged by any change, material or not, and even if

he sustains no injury by the change, or if it be for his benefit, he has a right to stand upon the very terms of his obligation and is bound no further. The guarantor is at least entitled to notice of change and the attempt to increase his burden and his chances of loss. (*Magazine Digest Pub. Co. v. Shade et al.*, 330 Pa. 487, 490, 199 A. 190, 117 A.L.R. 960.)" Another cited case is *Trego WaKeeney State Bank v. Maier*, 214 Kan. 169, 519 P.2d 743 (Kan.1974), where the court held that a guaranty of a father for his son's debts did not extend to a guaranty issued by the son, saying, 214 Kan. 169, 519 P.2d page 747[6, 7], "A contract of guaranty is to be construed, as other contracts, according to the intention of the parties as determined by a reasonable interpretation of the language used, in the light of the attendant circumstances. After the intention of the parties or the scope of the guarantor's undertaking has been determined by application of general rules of construction, the obligation is strictly construed and may not be extended by construction or implication. (38 C.J.S., Guaranty, § 38, pp. 1177, 1181)."

At 38 Am.Jur.2d, Guaranty, § 92, p. 1098, it is said, "Courts have often stated that an extension of the time of payment of the principal obligation by the creditor, if given as the result of a binding agreement between the creditor and debtor and not consented to by the guarantor releases or discharges the guarantor from liability on the contract of guaranty." See also 38 C.J.S. Guaranty, § 75, p. 1240, and note *Frick Co. v. Seibel*, 233 Mo.App. 200, 118 S.W.2d 497 (Mo.App.1938); *Citizens' Bank of Winona v. Evans*, 176 Mo.App. 704, 159 S.W. 765 (Mo. App.1913). In *Gandy v. Park Nat. Bank*, 615 P.2d 20 (Colo. banc 1980), there was a contract by guaranty very similar to the one here. The guarantor mailed a letter of revocation of his guaranty and thereafter the bank extended the date of payment on each of two notes four times. The court said page 22[4], that the bank created an indebtedness by granting to the borrower an extension of the original debt after it had received notice of Gandy's revocation, and by doing so, the bank relieved him of liability for the indebtedness. And at page 22[5], the court went on to say, "This conclusion is consistent with the generally recognized rule that, unless specifically provided for 'in clear and unequivocal terms', *Straus-Frank Co. v. Hughes*, 138 Tex. 50, 156 S.W.2d 519 (1941), 'a continuing guaranty does not cover renewals, after revocation, of obligations which were covered by the guaranty at the time of revocation.' (Citing cases)."

The principal debtors obligation was upon a demand note upon which appellants guaranteed the payment. "A demand note is, by its very nature, without specification of date of maturity. Demand for payment fixes the date of maturity." *Lynes v. Holt-Taylor Mercantile Co.*, 268 S.W. 702, 705[6–8] (Mo.App.1925). By their agreement of May 10, 1976, respondent and Certified Meats, Inc., mutually assented that in lieu of requiring payment on demand, the obligation was to be paid $1,000 per week on the principal and the interest was to be billed periodically to Certified Meats. All of this was clearly done without the knowledge or consent of appellants. A new contract between the creditor and debtor was substituted for the demand note. Appellants had a right to rely upon a demand being made for payment of the original obligation, and if on nonpayment, they were rendered liable to pay and did pay as per their guaranty, they could immediately pursue any remedies against the principal debtor. That original obligation cannot be extended by construction or implication. *Trego, supra*, and under the rule set forth in the *Failing* case, *supra*, appellants must be held to have been discharged from liability upon their guaranty.

The judgment is reversed.

All concur.