Duane C. DeCOTA, Appellant–
Respondent,

v.

J.E.M. DEVELOPMENT
CORPORATION,
Appellant,

and

Mary Lou Dilks, Respondent,

and

John P. Dilks, Defendant.

Nos. 20001, 20137.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 1, 1995.

Richard Whiffen, Sikeston, for Appellant Duane C. DeCota.

Michael M. Pritchett, Poplar Bluff, Summers, Walsh, Pritchett and Blaich, P.C., for Appellant J.E.M. Development Corporation and Respondent Mary L. Dilks.

1. For ease of reference only, we refer to the Dilks by their first names.

MONTGOMERY, Presiding Judge.

Duane C. DeCota (Plaintiff) sued J.E.M. Development Corporation (JEM), John P. Dilks (John)[1] and Mary Lou Dilks (Mary) after JEM failed to pay a promissory note in favor of the First Financial Bank of Southeast Missouri (Bank). Plaintiff, John, and Mary (John's wife) guaranteed payment of JEM's note by their individual guaranty agreements signed on April 8, 1991, the same day the note was made.

John, as JEM's president, executed the note which contained a maturity date of July 8, 1991. The time for payment was extended four different times by extension agreements signed by John either as president of JEM or individually. Plaintiff signed one extension agreement but Mary signed none.

Plaintiff paid Bank the balance due on JEM's note on July 14, 1992, and the note along with John and Mary's guaranty agreement was "endorsed" to Plaintiff. Later, Plaintiff brought this action seeking reimbursement for the amount he paid on the note. Subsequently, all parties filed a motion for summary judgment.

The trial court ruled on each motion for summary judgment by (1) granting Plaintiff judgment against JEM, (2) denying JEM's motion against Plaintiff, (3) granting judgment in favor of Mary against Plaintiff because the extension of time for payment of the note, without her knowledge or consent, operated to discharge her liability as a guarantor, and (4) denying Plaintiff's motion against John because issues of material fact remained in the case against him. Under the provisions of Rule 74.01(b)[2] the trial court expressly determined that the "judgments herein shall be final for purposes of appeal as there is no just reason for delay."

Plaintiff appeals from the summary judgment in Mary's favor, and JEM appeals from the summary judgment in Plaintiff's favor. Plaintiff's appeal will be addressed first.

2. Rule references are to Missouri Rules of Court (1995), unless otherwise indicated.

No. 20001

Rule 74.04(c)(3) provides that "the judgment sought shall be entered forthwith if a motion for summary judgment and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom the judgment was entered." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

> Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* (citations omitted).

Plaintiff's single point alleges that the trial court erroneously entered summary judgment for Mary because the extensions of time for payment of the note did not operate to discharge her, in that, her guaranty agreement allowed extensions of time without her consent and because the extensions did not enlarge or lessen her liability as guarantor.

One of the provisions in Mary's guaranty agreement provides that:

> [T]he bank may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of indebtedness, without any consent or approval by the undersigned and without any notice to the undersigned. The liability of the undersigned shall not be affected or impaired by any of the following acts or things (which the Bank is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaran-

ty, without notice to or approval by the undersigned): ... (ii) any one or more extensions or renewals of indebtedness (whether or not for longer than the original period)....

Plaintiff argues that this provision allowed the Bank (1) to four times extend the time of payment of the note without Mary's consent and (2) to do so without discharging Mary's liability as a guarantor. Mary urges that the Bank's extensions of time without her knowledge or consent were material alterations of the note guaranteed and as a result, her liability as a guarantor was discharged.

The law is well settled that "a guarantor is entitled to strict construction of the guaranty; a material alteration of the obligation guaranteed without the guarantor's consent will discharge the guarantor; if a change enlarges or lessens the liability, it is material and discharges the guarantor; and courts do not inquire whether the alteration was injurious or beneficial." *Wigley v. Capital Bank of Southwest Missouri*, 887 S.W.2d 715, 724 (Mo.App.1994). For example, the guarantor in *First State Bank v. Benson*, 613 S.W.2d 888 (Mo.App.1981), was discharged after a demand note was changed to a weekly payment schedule without the guarantor's knowledge or consent. *Benson* applied the general rule that an extension of time for payment by the principal obligor not consented to by the guarantor releases the guarantor from further liability. *Id.* at 891.

However, the general rule followed in *Benson* does not apply here because of the terms of the guaranty agreement. In 38 Am.Jur.2d *Guaranty* § 94 (1968), it is said that:

> A guarantor is bound by an agreement in the guaranty contract which permits extensions of time for the performance of the principal contract. When such an agreement is included in the guaranty contract, an extension of time within the intent of the agreement does not discharge the guarantor. The guaranty contract may be drafted with enough breadth so as

to allow a series of extensions or renewals without discharging the guarantor.

Among cases from other jurisdictions that apply the above principle are *Cravens v. First State Bank of Seminole*, 355 P.2d 1025 (Okla.1960), and *Gillespie v. DeWitt*, 53 N.C.App. 252, 280 S.E.2d 736 (1981). In both cases, the guaranty agreements contain language almost identical to the instant provision. In both cases, construction of the guaranty agreement provision resulted in a determination that the parties intended that the bank could, without notice or consent, grant multiple extensions of the principal obligation without discharging the guarantor's liability. Missouri courts apparently have not previously addressed the issue before us.

We believe *Cravens* and *Gillespie* are properly decided on the principle followed in each case. Therefore, the trial court erroneously applied the law by granting summary judgment in Mary's favor, and that portion of the judgment must be reversed.[3]

### No. 20137

JEM's appeal presents three points relied on in the following form:

1. The trial court erred in sustaining Plaintiff's motion for summary judgment against Defendant, JEM Development Corporation, for the reasons that said Defendant received no notice of default of the note; no demand for payment of the note; and no notice that Plaintiff had executed a guaranty.

2. The trial court erred in sustaining Plaintiff's motion for summary judgment against JEM Development Corporation for the reason that genuine issues of material fact exist as to whether prior adjudications concerning the subject matter of the note bar this action under the doctrine of res judicata.

3. The trial court erred in overruling the motion for summary judgment filed by JEM Development Corporation for the reason that Plaintiff's response to said Defendant's motion did not comply with Supreme Court Rule 74.04(c).

As described in Plaintiff's motion to dismiss this appeal, JEM's points 1 and 2 do not comply with Rule 84.04(d). This rule provides, in pertinent part:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous....

Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule.

*Jones v. Wolff*, 887 S.W.2d 806 (Mo.App. 1994), explains the Rule 84.04(d) briefing requirements as follows:

The three components of a point relied on are: a concise statement of the challenged ruling of the trial court; the rule of law the court should have applied; and the evidentiary basis upon which the asserted rule is applicable. Points which do not state what ruling of the trial court is challenged nor provide a proper evidentiary basis, but instead set out abstract statements of law, preserve nothing for appeal.

*Id.* at 808 (citation omitted).

Points relied on that do not meet the requirements of Rule 84.04(d) preserve nothing for review. *In re Marriage of McCoy*, 818 S.W.2d 322, 325 (Mo.App.1991). In addition, "allegations of error ... not properly briefed shall not be considered in any civil appeal...." Rule 84.13(a).

Points 1 and 2 ignore the why and wherein requirements of Rule 84.04(d).

3. Mary also argues that she was discharged because Plaintiff was "added" as a guarantor without her knowledge or consent thus changing her guaranty obligation by lessening her exposure. Nothing in the record supports this argument because the note and guaranty agreements were all signed the same day. Furthermore, the trial court's judgment was not based on this theory apparently because the record lacked factual support for such a determination.

Point 1 fails to set forth the rule of law which the trial court should have applied (the why requirement) if defendant failed to receive the stated notices or demand for payment. Point 2 fails to set forth the evidentiary basis upon which the doctrine of res judicata is applicable (the wherein requirement). As written, this point only sets out an abstract statement of law. *See State ex rel. Marshall v. Hercey,* 869 S.W.2d 878, 880–81 (Mo.App. 1994).

Regardless of such deficiencies, we may look to the argument portion of JEM's brief to determine if plain error occurred which would permit relief under Rule 84.13(c). *McCoy,* 818 S.W.2d at 325. The approximate one-page argument following each point provides little assistance for any meaningful plain error review. For that reason we decline the discretionary authority granted us by Rule 84.13(c).

JEM's last point argues that the trial court erred in denying his motion for summary judgment. It is well settled that the denial of a motion for summary judgment is not subject to appellate review. *Kabir v. Missouri Dep't of Social Services,* 845 S.W.2d 102, 103 (Mo.App.1993). "That holding has been made when a party has attempted to appeal from the order denying his motion for summary judgment, the rationale being that such an order does not constitute a final judgment for purpose of appeal." *Farmers and Merchants Ins. Co. v. Cologna,* 736 S.W.2d 559, 569 (Mo.App.1987). Explaining why such an order does not constitute a final judgment for the purposes of appeal, *Parker v. Wallace,* 431 S.W.2d 136 (Mo.1968), states:

> The matter of the propriety of the court's action in *overruling* a motion for summary judgment is not an appealable order. Upon that ruling, the issues raised by the pleadings are still in the case, and it is upon those issues, when decided and if timely and properly presented, that an appeal lies.

*Id.* at 137–38 (citation omitted).

JEM's appeal is dismissed. The summary judgment in favor of Mary against Plaintiff is reversed, and that portion of the case is remanded for further proceedings.

FLANIGAN and GARRISON, JJ., concur.