NIGHT & DAY BANK, Appellant, v. LAZARUS ROSENBAUM, Respondent.

St. Louis Court of Appeals, June 8, 1915.

1. BILLS AND NOTES: "Accommodation Party:" Primary Liability. An "accommodation party," defined by Sec. 10000, R. S. 1909, as one who has signed the instrument as a maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person, and who, by that section, is made liable to a holder for value, notwithstanding the holder, at the time of taking the instrument, knew he was only an accommodation party, is primarily liable to the

holder, under section 10161, which provides that a person primarily liable on an instrument is one who, by the terms thereof, is absolutely required to pay the same.

2. ———: ———: ———: Effect of Extending Time of Payment. An accommodation indorser of a promissory note can be discharged only by the discharge of the note in accordance with Sec. 10089, R. S. 1909, since he is primarily liable thereon, under Secs. 10000 and 10161, R. S. 1909, and hence an agreement binding the holder to extend the time of payment, although made without the assent of the indorser, does not release the indorser from liability.

3. ———: Payment: Renewal Note. In order that one note may operate as payment of another, there must be an understanding between the parties to that effect, and, in the absence of such an understanding, the renewal note amounts to no more than an agreement on the part of the holder that if it is paid at maturity, the original indebtedness shall be satisfied, and, in the interim, he assumes an obligation, if consideration appear, to await payment until the maturity of the renewal note.

4. ———: Accommodation Party: Payment: Renewal Note. The principal maker of a promissory note, which bore an accommodation indorsement, executed a renewal note but the payee retained the original note as collateral, pursuant to an agreement with the principal maker, but without the knowledge of the accommodation indorser. Held, that, under Sec. 10089, R. S. 1909, stating under what circumstances a negotiable instrument is discharged, the renewal note was not a payment of the original note, and did not discharge the accommodation indorser from liability on the original note, on the failure of the principal maker to pay the renewal note.

5. ———: ———: Pledge of Note to Secure Renewal Note: Effect. The principal maker of a promissory note, which bore an accommodation indorsement, executed a renewal note, but the payee retained the original note as collateral, pursuant to an agreement with the principal maker, but without the knowledge of the accommodation indorser. Held, that the principal maker did not, by this transaction, become the "holder" of the note, within Sec. 10160, R. S. 1909, and hence the note was not discharged, under the fifth subdivision of Sec. 10089.

6. ———: "Holder." Under Sec. 10160, R. S. 1909, defining the word "holder" as meaning the payee or indorsee of a bill or note, who is in possession of it, or the bearer of it, in order to constitute one the "holder" of a promissory note, he must be in possession or the holder of it.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

REVERSED AND REMANDED (*with directions*).

*George B. Webster* for appellant.

(1) It was error to instruct the jury that it was admitted that Rosenbaum was an accommodation indorser and that the plaintiff was aware of that fact. It was a fact in issue under the pleadings. The effort of the defendant to testify to it had been defeated on the plaintiff's objection. And there was not only no such admission, but no evidence to that effect. (2) The defendant's instruction number 8 was erroneous in that it omitted the essential element of an agreement to extend, namely, a consideration. R. S. 1909, sec. 10090. (3) The defendant's instruction number 9 was erroneous because it declared as a matter of law that marking paid a note subsequently taken without agreement that it should be a payment of a former note, amounted to a payment of the former note. Miners Bank v. Rogers, 123 Mo. App. 569; Keyser v. Hinkle, 127 Mo. App. 62: West Pub. Co. v. Corbett, 165 Mo. App. 7. (4) It was error to give the defendant's instruction number 10, as there was no evidence on which to base it. There was no testimony that the maker of the note involved put up any collateral when the subsequent notes were taken. On the contrary, all the evidence was that the collateral was put up on the original note. (5) The court should have given the plaintiff's third instruction refused. The bank was a holder for value and had a right to have the jury instructed that in such a case it was immaterial whether Rosenbaum was an accommodation indorser. R. S. 1909, section 10000. (6) Under all the evidence the plaintiff was entitled to recover against Rosenbaum. Dies v. Wilson Co. Bank, 165 S. W. 248.

191M.A.36

*I. Landauer* for respondent.

The new notes given March 29, 1912, May 4, 1912, May 4, 1912, May 4, 1912, June 6, 1912, July 6, 1912, discharged the indorser, whether the new notes be considered as payments or agreements for extension of time.   Bank v. Wood, 56 Mo. App. 214; Owen v. Bray, 80 Mo. App. 526; Donovan v. Clark, 84 Mo. App. 169; Jackson v. Bowles, 67 Mo. 609; Bank v. Freund, 80 Mo. App. 657; Keyser v. Henkle, 127 Mo. App. 75; Appleton v. Kennon, 19 Mo. 637; Savings Assn. v. Helmerick, 57 Mo. 100; Bank v. Leavitt, 65 Mo. 562; Stillwell v. Aaron, 69 Mo. 539; Johnson v. Bank, 173 Mo. 171; White v. Smith, 174 Mo. 186; Green v. Skinner, 75 Miss. 254; Fellows v. Prentiss, 3 Denio. 517; Ogden on Negotiable Inst,. sec. 227; Daniels on Negotiable Inst., sec. 1, 789.   Appellant, on March 29, 1912, May 4, 1912, May 4, 1912, May 4, 1912, June 6, 1912, July 6, 1912, tied its hands respecting the notes in suit, because on their face they were payable at a definite time or times in the future and interest paid on them in advance to the date of their maturity, so that the appellant could not have sued upon them until their due date.   Bank v. Freund, 80 Mo. App. 657; Citizens' Bank of Winona v. Evans, 176 Mo. App. 704; Bank v. Leavitt, 65 Mo. 562.

NORTONI, J.—This is a suit on three promissory notes.   The finding and judgment were for defendant and plaintiff prosecutes the appeal.

The principal debtor is the Southwestern Produce Distributors, a corporation, and defendant Rosenbaum is an accommodation party, in that he endorsed the several notes in suit for the accommodation of the Southwestern Produce Distributors, at and before their delivery to plaintiff.   The maker—that is, the Southwestern Produce Distributors—made no defense to the suit, while defendant Rosenbaum pleads in his answer

that he is an accommodation endorser and as such is discharged from liability, first, because the notes were paid; and, second, because time was extended for the payment to the principal debtor without his knowledge or consent. There is no evidence whatever tending to prove that the notes were paid and the principal matter for consideration here relates to the defense of the accommodation endorser, to the effect that he is discharged from liability because of a valid and binding agreement for an extension of the time of payment entered into between the plaintiff bank and the principal debtor, Southwestern Produce Distributors, without his consent.

The petition is in three counts. Each declares upon a separate promissory note therein described. The first note involved is of date January 9, 1912, and by its terms due sixty days thereafter. On this note a credit of $250 appears under date of January 27, 1912. The note is signed Southwestern Produce Distributors and on the back thereof endorsed as follows: "Demand for payment, protest and notice of dishonor are hereby waived. L. Rosenbaum." On the execution of the note it was delivered to plaintiff bank, who gave value therefor by the way of a loan of the amount to the principal debtor. On maturity of the note, March 9, 1912, it had been reduced by the partial payment thereon above mentioned, so that $1750 remained as the balance due. This balance was not paid and the plaintiff bank carried the note as overdue paper until March 29, when the Southwestern Produce Distributors made and delivered to the bank a note representing the same indebtedness—that is, for $1750,—due thirty days thereafter, on the form generally known as a collateral note, and this new note stipulated a pledge of the prior note—that is, the note now here in suit—as collateral security for the same indebtedness so represented in the second note then taken. However, the note now in suit was retained in possession of the bank all of the

time and it refused to surrender the same, for the reason that it had not been paid. Subsequently, payments were made on the indebtedness and these were credited on the back of the original note—that is, the note now in suit—so as to reduce the amount from $1750 to $1195.90. The second note taken for the same indebtedness was not paid, and on May 4, 1912, the Southwestern Produce Distributors executed three new notes in similar form, one for $395.90, one for $400, and another for $400, due on demand, whereupon the second note—that is, for $1750 of date March 29—was surrendered to that company; but the original note on which defendant was accommodation endorser—that is, the note now in suit here—was retained, as before, collateral to such demand notes representing the same indebtedness.

The second note sued upon is of date January 15, 1912, when it was executed and delivered to plaintiff bank by the Southwestern Produce Distributors, in the amount of $2500, for a loan. By its terms the note fell due on April 11, 1912. At and prior to its delivery defendant Rosenbaum endorsed the same for the accommodation of the maker and stipulated in writing thereon that he waived demand of payment, protest and notice of dishonor. On maturity of the note, April 11, no portion of it was paid and it was carried by the bank as overdue paper until May 4, at which time the Southwestern Produce Distributors made and delivered to plaintiff, on account of the same indebtedness, five separate demand collateral notes, upon each of which it pledged the original note of $2500 here in suit. However, the original note was not surrendered by the bank to the maker at the time, for the reason it had not been paid, but the new demand notes stipulated it should be retained by the bank as collateral security for such new notes so representing the same indebtedness. Subsequently, on June 5, there was paid on this indebtedness the sum of $500, and the amount so paid

was credited upon the back of the original note— that is, the note now in suit—and one of the demand notes therefore taken on May 4 for that amount was surrendered to the Southwestern Produce Distributors.

The note involved in the third count was executed by the Southwestern Produce Distributors to plaintiff bank on the 16th day of January, 1912, in the amount of $2500, and by its terms fell due on April 15, 1912. On the back of this note, at and before its delivery, defendant Rosenbaum affixed his signature as endorser, waiving demand of payment, protest and notice of dishonor. Certain payments were made on this note, so that, when it matured, $2248 was the balance unpaid. This balance was not paid and it was carried as overdue paper until May 4, when the Southwestern Produce Distributors executed a thirty-day collateral note to the bank, representing the same indebtedness, upon which it pledged the original note—that is, the note now in suit—as security therefor. Subsequently, several payments were made on the note, until the amount of the indebtedness was reduced to $2128, and the several credits were endorsed on the back of the original note—that is, the note now in suit—and likewise on the thirty-day note of date May 4, representing the same indebtedness. The note of date May 4 fell due on June 4, 1912, and on June 6 the Southwestern Produce Distributors took it up by giving a new collateral note for the balance due on such indebtedness—that is, $2128—due thirty days after date, and on this was likewise pledged, as collateral security, the original note, revealing all of the credits above mentioned. When the note of June 6 matured, it had been reduced in amount, so that the balance remaining due of the indebtedness represented by both notes was $1522, and the several credits showing this result were endorsed on both the original note now in suit so held as collateral and on the new note given on account of the same indebtedness as well. On July 6, the last-

mentioned new note for a period of thirty days was taken up by the Southwestern Produce Distributors executing a new note of that date, which likewise represented the same indebtedness and provided on its face that the original note—that is, the note now here in suit—was pledged as collateral security therefor. When the note last taken matured, there was due on the original debt represented in these notes $1509.65. No part of this debt was paid and the suit proceeds on the original note.

Though it appears from the facts above stated that several extensions of time as for a fixed period were given on each of the notes in suit through the bank's taking other notes on account of the same indebtedness from the Southwestern Produce Distributors, it appears, too, that none of the notes in suit were ever surrendered by the bank to the maker, but each and all of them were held as collateral to the balance due on the same indebtedness for which they were originally given. There is evidence tending to prove that there was a consideration, such as payment of interest in advance, for the extension of time on the indebtedness represented by the first two notes above described, while, on the other hand, the officers of the bank insist that no interest was paid in advance on any of these transactions, and, therefore, say no consideration for such extension appears. It is conceded that no interest was paid in advance for the extension of time given on account of the indebtedness represented by the note sued upon in the third count of the petition—that is, on any of the extensions made concerning the indebtedness represented in the note of date January 16, 1912; but it is said the deposit of additional collateral sufficed to afford consideration for the extension of time of payment under this note. The evidence is not clear as to this, but, for the purposes of the case, it may be conceded that such consideration appears. We say this, for that, in any view, the defendant Rosenbaum,

an accommodation endorser, is not entitled to be discharged because of an extension of time to the principal debtor, under the provisions of our Negotiable Instruments Law, and this is true even though such extensions were granted to the maker for a definite period on a valid consideration under each of the several notes, without his assent. It appears defendant Rosenbaum did not assent to an extension of time in any of the instances referred to.

Formerly, a valid and binding agreement entered into between the principal maker, and the holder of the note, on sufficient consideration, by which the time for payment was extended to the maker to a day certain operated to discharge an accommodation endorser, who was then regarded secondarily liable and stood in the relation of surety; but this is no longer true. All of the notes in suit here were executed and delivered subsequent to the adoption of our Negotiable Instruments Statutes, which materially change the rule in respect of this matter.

Touching this subject, it is said in 2 Daniels on Negotiable Instruments (6 Ed.), by Calvert, section 1312, that the former rule is abrogated perforce of the Negotiable Instrument Statutes. The author says:

"The statute defines a person 'primarily' liable as the person who by the terms of the instrument is absolutely required to pay the same, and declares that all other parties are 'secondarily' liable. Other sections of the statute prescribe the conditions under which an instrument is discharged or which will result in the discharge of a person secondarily liable. Under those provisions and the further rule under the statute that a surety is primarily liable, the doctrine of the law of suretyship that a binding extension of time by the creditor to the principal releases the surety has, according to the authorities, been abrogated, and it is generally held under the statute that an agreement with the principal extending the time of payment does not

release from liability one who signed as surety, or as an accommodation maker.''

Defendant Rosenbaum sets forth in his answer that he executed each of the notes described in the three counts of the petition and sued upon as accommodation endorser of the Southwestern Produce Distributors and that this fact was known to plaintiff bank at the time. On this he predicates his right to a discharge because of a valid and binding agreement between plaintiff and the principal debtor for an extension of time concerning the payment of each note which, it is averred, was entered into without his knowledge or consent. This being true, it is conceded, for the purposes of the case, and, indeed, there is no evidence to the contrary, that defendant is an accommodation endorser in each instance, and if, as such, he was secondarily liable on the instrument, he is entitled to his discharge; otherwise not.

Section 10000, Revised Statutes 1909, defines an accommodation party and fixes his status with respect to the obligation assumed. The statute is as follows:

''An accommodation party is one who has signed the instrument as a maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.''

The statute expressly declares that such person is liable on the instrument to the holder for value, notwithstanding such holder, at the time of taking the instrument, knew him to be only an accommodation party. This being true, he is to be regarded as primarily liable thereon, under the provisions of section 10161, Revised Statutes 1909. Indeed, an accommodation maker was primarily liable to the holder of the instrument before the statute, as has been determined by

our Supreme Court (see Maffat v. Greene, 149 Mo. 48, 50 S. W. 809); and the statute now renders such an indorser the same.

However, an accommodation indorser was formerly regarded as occupying the relation of surety so as to entitle him to a discharge on account of an extension of time to the principal maker, as will appear by reference to Weimer v. Shelton, 7 Mo. 237; Globe, etc. Ins. Co. v. Carson, 31 Mo. 218; Priest v. Watson, 75 Mo. 310. But though such be true, the statute last cited, when considered together with sections 10089 and 10090, Revised Statutes 1909, abrogates the rule, in so far as it formerly afforded a discharge to the accommodation indorser on the grounds of suretyship, for these sections (10089 and 10090) confine the right to discharge, except where the instrument itself is discharged, to persons secondarily liable thereon, and an accommodation party is not secondarily liable.

Section 10161, Revised Statutes 1909, declares:

"The person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable."

As before stated, both before and since the statute an accommodation maker is primarily liable on the instrument. There is no provision in the statute for the discharge of a person primarily liable through a binding agreement for an extension of time entered into, but this right is accorded only in favor of those secondarily liable. Persons primarily liable are acquitted of liability only by such acts as operate to discharge the instrument itself under section 10089, Revised Statutes 1909. But it is otherwise with persons secondarily liable. Section 10090, Revised Statutes 1909, concerning this is as follows:

"A person secondarily liable on the instrument is discharged: (1) By any act which discharges the instrument; (2) by the intentional cancellation of his

signature by the holder; (3) by the discharge of a prior party, except when such discharge is had in bankruptcy proceedings; (4) by a valid tender of payment made by a prior party; (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; (6) by an agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved.''

The sixth subdivision of the statute last quoted prescribes a discharge from liability to persons secondarily liable by an agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved. But, as before said, this alone is not sufficient to discharge a person who is primarily liable, under the statutes above quoted, and it is now well settled that an accommodation endorser is primarily liable on the instrument, under the provision of section 10,000 supra, as will appear by reference to the following authorities in point: Union Trust Co. v. McGinty, —— Mass. ——, 98 N. E. 679; Wolstenholme v. Smith, 34 Utah, 300. So, too, is a surety who signs with the principal debtor as a joint maker of a note primarily liable thereon, as has been. determined by the Kansas City Court of Appeals in Lane v. Hyder, 163 Mo. App. 688, 147 S. W. 514. [See, also, Bank of Senath v. Douglass, 178 Mo. App. 664, 161 S. W. 601; Vanderford v. Farmers' Bank, 105 Md. 164.] We regard the rule of these cases as not only reflecting the correct view of the Negotiable Instrument Statutes but as tending to lend stability and support to credit on commercial paper, for, indeed, the prior state of the law in respect of the same question was highly techni-

·cal and entailed harsh results frequently without just ·cause whatever.

Defendant Rosenbaum, being primarily liable on the notes in suit, could be discharged only in event such instruments were discharged. The statute (section 10089, R. S. 1909) concerning this is as follows:

"A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancellation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right." [See, also, Union Trust Co. v. McGinty, —— Mass. ——, 98 N. E. 679; Wolstenholme v. Smith, 34 Utah, 300.]

There is no evidence whatever to the effect that the instruments were paid, save the fact that some of the renewal notes to the Southwestern Produce Distributors were marked paid when others were given in lieu of them. The evidence is all of one accord to the effect that the original notes now sued upon were not paid and the bank refused to surrender them for that reason. However, when one of the renewal notes by which the time of payment was extended matured and to secure which the original notes were held as collateral, a new or renewal note according an additional extension of time would be taken. On taking such renewal note, the prior intermediate renewal note, by which time was extended, would be stamped paid and surrendered, but the original notes sued upon were always retained for the reason they were not paid, and this, too, with an express understanding between the parties—that is, the principal maker and the bank.

Obviously these transactions did not amount to payment of the notes in suit, for, in order that one

note may operate as payment of another, there must be an understanding between the parties to that effect; otherwise, such notes so given in extension and on account of the same indebtedness are regarded as merely conditional payments, in event they are not actually paid when due. The original indebtedness continues to subsist as before, unless, as above stated, an agreement between the parties reveals an intention to extinguish the indebtedness as through payment. [See Kayser v. Hinkle, 127 Mo. App. 62, 106 S. W. 98.] When the holder receives a renewal note thus as conditional payment, it amounts to no more than an agreement on his part that if such note is paid at maturity the original indebtedness shall be satisfied and in the interim he assumes an obligation, if consideration appear, to await the payment until the maturity of the renewal note. [See Bank v. Leavitt, 65 Mo. 562.] It appearing conclusively as it does that the parties merely intended an extension of the time of payment and that it was agreed the indebtedness should not be extinguished by such renewals, the defense of payment wholly failed.

But it is urged that the transactions by which the new notes were taken and the original notes now sued upon pledged as collateral security thereto operated as a discharge of such instruments—that is, the original notes were constructively taken up by the original maker and reissued as a pledge in security of the new notes, which were in fact but renewals of the subsisting indebtedness. What is said in Bank v. Evans, 176 Mo. App. 704, 159 S. W. 765, is relied upon in support of this argument. But obviously that case is wholly beside the question in judgment here. The notes there in suit were executed in 1902, at which time the contract of guaranty was entered into and the rights of the parties became fixed, and this was long prior to the adoption of the Negotiable Instrument Statutes. Moreover, the notes involved in that case

were Mississippi contracts and the Negotiable Instruments Statutes of that State, if any, were not in evidence. The case was, therefore, disposed of without reference to the new rule reflected in the statutes—that is, according to the law merchant and common law of pledge. The question here is to be determined by reference to those statutes, for these are Missouri notes made subsequent to the Negotiable Instruments Act.

It appears that the several instruments on which defendant Rosenbaum is an accommodation party and, therefore, primarily liable, could be discharged so as to relieve him from the obligation to respond thereon only in the manner pointed out by the statute (section 10089, R. S. 1909). This statute is as follows:

"A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancellation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

The only one of the five subdivisions of the statute relevant for consideration here on this question is the fifth—that is, "When the principal debtor becomes the holder of the instrument at or after maturity in his own right." Although it be true that the transaction by which the new notes were taken for the same indebtedness provided, too, that the original notes in suit should be pledged as collateral therefor, it is conceded throughout the case that none of these original notes was ever surrendered to the principal maker. On the contrary they were retained by the bank, for the reason, as before said, they were not paid, and the agreement to that effect was accordingly made in order

to effectuate the collateral security vouchsafed therein by utilizing the endorsement of Rosenbaum. However, if the principal debtor, the Southwestern Produce Distributors, became holder of such instrument at or after maturity in its own right through these transactions, then the instruments sued upon are discharged and Rosenbaum and all others acquitted of liability thereon. It becomes then important to ascertain the meaning of the word "holder" employed in section 10089. By section 10160, Revised Statutes 1909, the word "holder" is defined for the purpose of the Negotiable Instrument Act, and it is to be treated with in the sense there given. The definition is as follows:

" 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof."

The principal debtor, Southwestern Produce Distributors, was neither the payee nor endorsee of the note, neither was it the bearer thereof. Moreover, the definition above quoted implies that, in order to be a holder, one must be in possession of the note or the bearer thereof. Of course, the bearer is to be regarded as in possession. There is nothing in the evidence tending to prove that the Southwestern Produce Distributors, the principal maker, was ever in possession of any of these notes as between these parties during any of the time or that it was the bearer thereof. On the contrary it appears it was not. Indeed, the notes were retained by the bank, denying the maker's right to possession and this, too, under an express agreement to that effect on its part. This being true, it is clear that the principal debtor never became the "holder" of the instrument, at or after its maturity, in his own right, for, indeed, they were retained at all times by the bank and though the transaction may have involved a constructive taking up and reissue of the

notes through pledging them as collateral, they were not discharged under the statute.

It appearing as it does that there is no valid defense whatever to the notes in suit, the judgment should be reversed and the cause remanded with directions to the trial court to enter judgment for the plaintiff bank for the amount due with interest on each of the notes sued upon. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.