# Decisions Court of Appeal

## Parish of Orleans.

### No. 6660.

**SAMUEL BONART v. MRS. A. P. RABITO.**

#### On Rehearing.

#### Syllabus.

1. An accommodation endorser is, within the meaning of the Negotiable Instrument Law, Act 64 of 1904, secondarily and not primarily liable.

2. An endorser notwithstanding that he has waived demand, notice of non-payment and protest, is nevertheless released if, after the maturity of the note, the holder, without the endorser's consent, enters into a binding agreement with the maker granting additional time to the latter to discharge his obligation.

Appeal from the Civil District Court, Parish of Orleans, Division "B", No. 110,940, Hon. Fred. D. King, Judge. Former decree amended.

E. M. Cahn, for plaintiff and appellee.

Dart, Kernan & Dart, for defendant and appellant.

His Honor, EMILE GODCHAUX, rendered the opinion and decree of the Court as follows:

### I.

We adhere to our former opinion, but upon the rehearing the additional point is made that since defendant in her answer concedes that she is an accomodation endorser, her

liability under the Negotiable Instrument Act, Act 64 of 1904, is that of a maker, that is primary and unconditional, and that consequently she is not released by any extensions to the maker, even one beyond the terms of the waiver consented to by the endorser.

In support of this proposition a decision by the St. Louis Court of Appeals, reported in 177 *S. W. Rep.*, 693, *Night and Day Bank v. Rosenbaum,* is cited; but we must confess that we are unable to appreciate or readily follow the reasoning upon which this conclusion is based.

The main provisions of the Negotiable Instrument Act relevant to this question are the following:

> "Section 29. An accommodation party is one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

> "Section 192. The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay same. All other parties are 'secondarily' liable."

The St. Louis Court arbitrarily assumes that the word "liable" employed in Section 29 signifies "primarily liable" as defined in Section 192, though we can discover no substantial basis for that assumption. It cites two cases as authority for its statement that "it is now well settled that an accommodation endorser is primarily liable under

2

the provisions of Section 10,000 (Sec. 29), as will appear by reference to the following authorities in point:

> *Union Trust Co. v. McGinty*, 212 *Mass.*, 205; 98 *N. E.*, 679.
>
> *Wolstenholme v. Smith*, 34 *Utah*, 300; 97 *Pac.*, 329.

But both the Massachusetts and Utah cases deal with accomodation **makers,** not accommodation **endorsers,** and moreover the opinion in these cases, as shown by the following extract, instead of supporting, advocate a doctrine directly opposed to the St. Louis Court's conclusion that **all** accommodation parties, whether makers or endorsers, are primarily liable:

> "It (the Negotiable Instrument Law) determines the liability of the various parties to the instrument on the basis of that which is written on the paper."
>
> "The act makes no provision for the proof of another and different relation from that expressly undertaken and defined by the tenor of the instrument signed."

The object of the section was to avoid all future controversy, to brush aside all past conflict of opinion and to fix with certainty the status of an accommodation party, be he maker, endorser, acceptor, drawer or what not and to that end it puts accommodation parties in the same catagory as ordinary parties by excluding proof as to their real or fanciful intention, making the instrument speak for itself and holding the parties liable in the quality or capacity in which their signatures appear thereon—or as the Massachusetts Court puts it: "Determines the liability of the various parties on the basis of that which is written on the paper."

In other words we are of the opinion that one who as an accomodation party has signed an instrument as maker,

drawer, acceptor or endorser incurs the same liability as one who signs an instrument as maker, drawer, acceptor or endorser upon receiving value therefor; and that consequently an accommodation endorser incurs the liability of an ordinary endorser and is not primarily but secondarily liable.

And we consider that the following authorities support this view of the effect of the Negotiable Instrument Act:

> *Williams v. Bank,* 137 *S. W.* 535 *(Ky.)*
>
> *Deahy v. Choquet,* 28 *R. I.* 340, 14 *L. R. A.* (*N. S.*) 847.
>
> *Bank v. Katterjohn,* 125 *S. W.* 1071 *(Ky.)*
>
> See also *Frazier v. Ellwood Bank,* 34 *Ohio Circ. Ct.* 508.

## II.

Another proposition submitted by plaintiff is that after demand, notice and protest, or upon dishonor (where as in this instance these formalities are expressly waived), the liability of the endorser is no longer secondary but primary, and that consequently he is not discharged by an unauthorized extention thereafter granted by the holder to the maker.

The error lies in the premise that the **nature** of an endorser's obligation changes after dishonor. It is true that the endorser's liability then becomes "fixed", but in the sense only that his obligation has matured and performance thereof is demandable of him. Nevertheless he still possesses the attributes of a party secondarily liable, for these he does not lose despite the maturity of his obligation. The theory that the nature of the obligation has changed is no more true of an endorser than it is of an ordinary surety—

4

they retain equally the characteristics of a party obligated to pay the debt of another, that is, secondarily liable, and as such they are entitled to set up all defenses that would operate as a release of their obligation.

And in the application of that principle the Courts of this State have gone so far as to hold that even after judgment against the endorser or surety, he is released from his obligation by an extention of time granted without his consent by the creditor to the principal debtor, the theory being that his rights are violated because under the subrogation he enjoys, he can no longer, by reason of the extention, demand immediate performance of the principal debtor.

> *Calliham v. Tanner,* 3 R. 299.
> *Gustine v. Bank,* 10 R. 412.
> *Allison v. Thomas,* 29 A. 734.
> *Darby v. Fusilier,* 21 A. 638.
> *Gay v. Blanchard,* 32 A. 503.

And more recently, in *Parker v. Guillot,* 118 *La.* 223, the principle that the endorser is released by an extention to the maker granted after the note had been dishonored or protested, was again recognized, though it is true that the principle was not therein applied because the grant of time was held to constitute a 'mere indulgence not binding on the holder.

And again in *Union National Bank v. Grant,* 48 *A.* 18, it was held, that because an endorser, had, as in this case, waived demand, notice and protest, it did not follow that the holder could consequently impair or destroy the recourse of the endorser against the maker, or in other words, that the endorser still preserved all those privileges attach-

ing to his status as such that are not comprised within the import of the terms of the waiver itself.

> "We can find no basis, therefore, to extend the waiver in this case so as to relinquish a defense not at all connected with the subjects of the waiver."

## III.

Upon the rehearing plaintiff also urges that there is no testimony to sustain our finding that the extentions were granted without the endorser's knowledge or consent.

Strictly this is true, but since the petition recited that two extensions had been granted, and since the legal effect of this was to discharge the endorser, it consequently was incumbent on plaintiff to allege and prove consent or knowledge on the part of the endorser. And as neither allegation nor proof on that score was made, we properly concluded that the extensions were granted without the knowledge or consent of the endorser.

However that may be, since plaintiff now claims, though somewhat tardily, that such proof is in his possession, we have concluded to amend our decree so as not to foreclose his rights in that respect.

Our former decree is amended in so far only as to provide that plaintiff's demand be rejected as in case of nonsuit, and as thus amended, and in all other respects, said decree is reinstated and made the final judgment of this Court.

Former decree amended.

Opinion and decree December 18, 1916.

Rehearing refused December 22nd, 1916.

Writ granted February 14, 1917, (141 L. 970.)

Former opinion reported in Book XIII, p. 358.